**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0610n.06

No. 12-5922

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 27, 2013
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,  )
)
    Plaintiff - Appellee,  )   ON APPEAL FROM THE UNITED
)   STATES DISTRICT COURT FOR THE
    v.  )   EASTERN DISTRICT OF KENTUCKY
)
ARDITH DOBSON,  )
)      **OPINION**
    Defendant - Appellant.  )

Before:  **DAUGHTREY, MOORE, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Ardith Dobson appeals the district court's judgment revoking his supervised release and imposing a 32-month prison sentence. He argues that the evidence was insufficient to establish a violation of his conditions of release. We disagree and **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

Shortly before 3:25 a.m. on November 17, 2011, Kathleen Click called 911 to report that Ardith Dobson, her boyfriend, had assaulted her at her home. Kentucky State Police Officer Joel Abner responded to the call, but learned on his way to Click's house that Click was en route to the hospital in an ambulance. Abner arrived at Click's home at approximately 4 a.m., but did not go inside because no one was there. Before leaving, though, he noticed blood smeared on a screen door and on the front porch.

Abner found Click getting medical care in the major trauma wing of the hospital's emergency room at about 4:40 a.m. He observed a four-inch laceration on her head and a one-inch deep gash on her right forearm. Click's left bicep was cut, as was her right eyebrow. Blood covered Click from her neckline to her feet.

During their interview—slowed down to some extent by Click's inebriation and hearing loss—Click related that Dobson hit her several times with a whiskey bottle when she confronted him about his infidelity. Dobson was very drunk when the assault occurred and fled after she called 911. Before Abner left the hospital a bit after 5:00 a.m., Click told him that she wanted to press charges against Dobson. Abner later testified that Click did not appear to be confused about how she was injured, nor mention that anyone else was in her home when the attack occurred.

Abner next spoke to Click a week-and-a-half later. She had changed her mind and no longer wanted to press charges. Click told Abner that "she didn't want to put anything else on Ardith." At no point, though, did she exculpate Dobson. When Dobson was arrested two weeks after the assault, Click called Abner to ask what she needed to do to drop the charges. At this time, too, she did not suggest that someone else attacked her.

The assault charge against Dobson was ultimately dismissed without prejudice. But because he was serving a six-year supervised-release term, the probation department sought revocation of Dobson's supervised release for allegedly violating one of its terms that prohibited him from committing any crimes.

At Dobson's supervised-release-revocation hearing on April 6, 2012, a magistrate judge heard testimony from Dobson's probation officer, Click, Abner, Dobson's niece Alicia Dobson, and

his brother Ricky Darrell Dobson. When Click took the stand, she dropped a bombshell: she testified that the story she told Abner about Dobson was fabricated to punish Dobson for his unfaithfulness. Now claiming a dim recollection of what happened that night, Click related that Tracy, a woman with whom Click had previously tussled, was responsible for her injuries.

The government pointed out that Click had never mentioned Tracy to Abner, even though they had spoken on at least three occasions. And Alicia Dobson testified that Click told her for the first time *that day* that Tracy was responsible, even though she asked Click what happened before and talked to her multiple times about the assault.

Dobson argued that Click's intoxication and propensity to black out made all of her testimony unreliable, but the magistrate judge found that the statement Click made to Abner at the hospital was most likely true. He reasoned that in her state that night—"[d]runk, unconscious and viciously beaten"—Click did not likely lie to get revenge on Dobson, as she now claimed. The magistrate judge also questioned her selective memory loss, noting that she now had a "clear recollection" that Tracy hit her with the whiskey bottle, and remembered a detailed conversation she overheard in the emergency room. And he found that Click's refusal to aid in Dobson's prosecution "did not in any way attempt to exonerate" Dobson. Although the magistrate judge found the evidence to be "conflicting," he concluded that it established that Dobson had violated the terms of his supervised release.

Over Dobson's objections, the district court concurred in the magistrate judge's findings and conclusions. The court deferred to the magistrate judge's evaluation of Click's credibility, as the magistrate judge sat through the proceedings, listened to Click's testimony, and observed her

comportment under examination. And the court endorsed the greater weight the magistrate judge gave to Click's hospital statement by analogy to the hearsay exception for excited utterances, which recognizes that a statement made while a declarant is under the stress of excitement from a startling incident contains "inherent guarantees of truthfulness." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983). The district court revoked Dobson's supervised release and sentenced him to a 32-month prison term.

Dobson appeals only the district court's revocation decision, which we have jurisdiction to review under 28 U.S.C. § 1291.

## II. ANALYSIS

Dobson argues that the evidence supporting the district court's determination that he violated the conditions of his supervised release was insufficient. We apply an abuse-of-discretion standard to appraise a district court's decision to revoke supervised release. *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000). We review its legal conclusions de novo, *id*., and its factual findings for clear error, *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006).

To revoke a defendant's supervised release, a court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000). And to reverse a revocation order, a reviewing court needs to have a "definite and firm conviction" that the district court's conclusion was "a clear error of judgment." *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991).

Dobson complains that the only evidence tying him to the assault on Click—the drunken statement she gave Abner in the hospital—was inadmissible hearsay evidence.[1] Because a revocation hearing is "more flexible than a criminal trial," sufficiently reliable hearsay evidence is unobjectionable. *Id.* So Dobson's argument does not get him very far unless he can show that Click's hospital statement was unreliable. Dobson insists Click's later admission that it was a lie makes the statement categorically insufficient to establish a supervised-release violation.

Dobson is mistaken. Factfinders regularly face recanting witnesses, and must decide whether to credit one version of events over another, or to disregard them all. A factfinder could plausibly conclude that Click's hospital statement, bolstered by other corroborating evidence present here, was sufficiently reliable, even if her later recantation was not. *See United States v. Hadley*, 431 F.3d 484, 510–14 (6th Cir. 2005) (finding no error in the sentencing court's reliance on a domestic abuse victim's post-incident statement that the defendant held a gun to her head to conclude that the defendant used or possessed a gun in connection with a crime of violence, despite the victim's recantation at a later sentencing hearing).

To begin with, the circumstances surrounding Click's hospital statement permitted the court to reasonably infer that she was not apt to lie about the identity of her attacker at that time. Click spoke to Abner about an hour after she was brutally beaten. Tracking the rationale of a venerable evidentiary rule concerning the reliability of so-called excited utterances, the court reasoned that Click's hospital statement was not likely contrived because she was under the stress of excitement

---

[1]The reliability of Abner's report is not at issue here. While Click was undoubtedly intoxicated when she spoke to Abner at the hospital, Dobson does not suggest that his account of their conversation is untrustworthy. Nor does Dobson question the veracity of Abner's later hearing testimony.

from the assault when she told Abner that Dobson was the perpetrator. *See* Fed. R. Evid. 803(2); *Haggins*, 715 F.2d at 1057. Abner corroborated that Click did not appear to be confused about how she was injured, or say that another person was present when the attack occurred. Moreover, the hospital statement was actually the *second* time Click pinned the blame on Dobson that night, having earlier told the 911 dispatcher that Dobson was responsible. The court reasonably thought it implausible that an intoxicated assault victim soberly calculated revenge against an innocent party right after she was attacked, at the cost of letting her assailant escape.

Other record evidence also supports the court's decision to discount Click's later story without undermining the reliability of the earlier one. Click established her motive to bend the truth early on. When she spoke to Abner more than a week after the attack but before the revocation hearing, Click explained that "she didn't want to put anything else on Ardith." And although they talked three times before the hearing, Click never told Abner that Dobson was not responsible or that someone else was. Moreover, Dobson's niece testified that Click did not relate to her that another person was involved until the morning of the hearing, even though they spoke four or five times after the assault and Alicia directly asked Click what transpired that night.

Before concluding, we note that Dobson failed in his endeavor to establish an alibi. Dobson's brother tried to place him at their father's house on the night of the assault, but told the court that he did not know where Dobson was between 10 p.m. and 5 a.m. This testimony does not help Dobson because Click was attacked at around 3 a.m., called 911 at 3:25 a.m., and told Abner that Dobson fled after she placed the call. At most, Dobson established that he did not have a car

to get to and from Click's home. The court below did not err in sifting through—and disregarding—this evidence.

At bottom, the district court made factual determinations based on evidence that bore sufficient indicia of reliability, and properly pushed aside evidence that did not. Dobson may not agree with the court's credibility determinations or the inferences it drew from the evidence, but those factual findings were neither contrary to the facts nor clearly erroneous. So we defer to them.

### III. CONCLUSION

Dobson's arguments on appeal do not leave us with a "definite and firm conviction" that the district court's conclusion was in error. *Stephenson*, 928 F.2d at 732. As the court acted well within its discretion in concluding that Dobson violated a condition of his supervised release, we **AFFIRM**.