BOGGS, J., delivered the opinion of the court in which SILER, J., joined. CLAY, J. (pp. 474-77), delivered a separate dissenting opinion.
OPINION
BOGGS, Circuit Judge.
On December 7, 2010, Defendant-Appellant Mauricio Givens pled guilty to bank fraud. On April 4, 2011, the court sentenced Givens to 18 months of imprisonment and four years of supervised release. On July 14, 2011, Givens was released and his supervised release began. In November 2013, Givens’s probation officer petitioned the court to revoke his supervised release. The officer claimed that Givens attempted to drive his car into Steven Queen. During the revocation-of-release hearing that followed this petition, Givens sought to impeach Queen on the basis of hearsay evidence. The district court refused to admit that evidence and subsequently revoked Givens’s supervised release. Givens timely appealed. We affirm the judgment of the district court for the reasons that follow.
“The [district] court may, after considering [certain factors] ... revoke a term of supervised release, ... if the court ... finds by a preponderance of the evidence that the defendant violated a condition of supervised release.... ” 18 U.S.C. § 3583(e)(3). Such district-court revocations of supervised release are discretionary. This court reviews those revocations for an abuse of discretion. See, e.g., United States v. Stephenson, 928 F.2d 728, 731-2 (6th Cir.1991); see also N.L.R.B. v. Guernsey-Muskingum Elec. Co-op., Inc., 285 F.2d 8, 11 (6th Cir.1960) (defining an abuse of discretion as “arbitrary action not justifiable in view of’ the situation and circumstances affecting the individual case).
Because we review a decision to revoke a prisoner’s release for an abuse of discretion, this case does not turn on whether Queen testified accurately that Givens assaulted him. Rather, it turns on whether or not the district court was within its discretion to exclude evidence that might have called Queen’s testimony into question. In particular, Givens attacks the district court’s exclusion of two reports about Queen: “a police report, and the follow-up Secret Service [report] of Mr. Queen.” According to Givens’s counsel, the report “talk[ed] about how [Queen has] tried to intimidate people,” but the court, looking at the report, concluded that it was a report that a church pastor had called the police to tell them that one of his members said that Queen had harassed her; because it was “just a bunch of hearsay,” the court refused to let Givens use it *472 as impeachment material. Givens’s counsel did cross-examine Queen without that report. One question Givens’s counsel asked was whether Queen had “ever been charged with harassing anyone” other than Givens.
Our task is to determine whether there was any justification for the district court to exclude the hearsay evidence that purportedly concerned Queen’s reliability as a complaining witness. There was, as a brief review of the relevant doctrinal history will show.
Prior to 1970, it was not clear that the Constitution demanded any trial process in administrative proceedings. In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court applied “the template for adjudication provided by the Federal Rules ... in some respects to the administrative context.” Judith Resnik, For Owen M. Fiss: Some Reflections on the Triumph and the Death of Adjudication, 58 U. Miami L.Rev. 173, 179 (2003) (emphasis added). Despite the costs to the government, Goldberg and its sequellae afforded a nonzero but less-than-trial amount of process to participants in administrative proceedings.
The revocation of parole is an administrative proceeding, and the Court applied Goldberg to it. Morrissey v. Brewer, 408 U.S. 471, 487, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). This court, in turn, applied Morrissey to revocation-of-supervised-release cases. United States v. Lowenstein, 108 F.3d 80, 85 (6th Cir.1997). The Mor-rissey Court clarified “the minimum requirements of due process,” including (a) written notice, (b) disclosure of evidence, (c) opportunity to be heard in person and to present evidence, “(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation),” (e) a neutral and detached arbiter, and “(f) a written statement by the factfinders as to the evidence relied on and reasons for” revocation. Morrissey, 408 U.S. at 489, 92 S.Ct. 2593 (emphasis added).
Because Goldberg does not turn every administrative process into a full trial, Morrissey does not entitle convicts to the full panoply of process due to a criminal accused of a crime in the first instance. Morrissey, 408 U.S. at 489, 92 S.Ct. 2593 (“[T]here is no thought to equate ... revocation to a criminal prosecution in any sense.”). Rather, the idea of Morrissey was to provide some process to the would-be prisoner while keeping the cost to the government of such process lower ■ than that of the process due at trial to the accused. The Morrissey Court emphasized that it had “not thought to create an inflexible structure for parole revocation procedures.” Id. at 490, 92 S.Ct. 2593. Such an inflexible structure would too little respect the government’s legitimate interest in efficiently revoking the supervised release of convicts who had violated the terms' on which their release, was conditioned.
To mandate that judges presiding over revocation-of-release hearings allow hearsay evidence that might tend to impeach government witnesses would be to extend Morrissey beyond all -recognition. In other words, Givens was not due a revocation-of-release process as defendant-friendly as a process due to criminals before convictions, let alone a process more defendant-friendly.
This historical background shows that Morrissey and its sequellae do not require a judge to admit hearsay evidence in a revocation-of-release setting. Although hearsay is admissible under certain conditions, see, e.g., United States v. Wa *473 ters, 158 F.3d 933, 940-41 (6th Cir.1998), the court is not obliged to admit such evidence. And the rationale for excluding hearsay from trial suggests why a court, in its discretion, might exclude hearsay from an administrative hearing, too. For one thing, hearsay is unreliable, almost by definition. The court might not consider evidence that it considers more likely to obscure than to develop facts. For another, common intuition reveals that “the events that we know firsthand (that is, of our own personal knowledge) are fewer than those of which we have secondhand knowledge (that is, we know of them only through hearsay).” 30 Wright & Graham, Fed. Prac. & Proc.: Evid. § 6321 at 7 (1997). From this logical rule follows a legal one: courts exclude most hearsay from trials. So, “[t]he power over the admission and exclusion of hearsay is a substantial weapon in the trial judge’s arsenal.... [I]f hearsay were freely admissible, the number of potential witnesses in a lawsuit and the amount of testimony each could give would expand dramatically.” Ibid.
As a structural matter, the court might not consider evidence that slows the proceeding, either concerned for judicial economy (this is the rationale, for example, for the rule of evidence that a litigant cannot introduce extrinsic evidence on a collateral matter only for the purpose of contradicting a witness) or for government interests (interests recognized by Goldberg and Morrissey).
We can distinguish our cases that seem to hold otherwise. In United States v. Kokoski, 435 Fed.Appx. 472 (6th Cir.2011), the district court revoked the defendant’s supervised release and relied, in part, on professional records about him. After opining that the records were, in fact, exceptions from the hearsay exclusions because they were business records, we observed that their admission did not prejudice the defendant and so did not constitute reversible error. ' Ibid. Other revocation-of-release apparently hostile to the exclusion of hearsay evidence affirm district-court revocations of release. See, e.g., United States v. Kirby, 418 F.3d 621 (6th Cir.2005), United States v. Shakir, 574 Fed.Appx. 712 (6th Cir.2014), United States v. Dobson, 529 Fed.Appx. 536 (6th Cir.2013), United States v. Thompson, 314 Fed.Appx. 797 (6th Cir.2008), and United States v. Shipman, 215 F.3d 1328 (6th Cir.2000) (table). Here, Givens, not the government, sought to introduce the alleged hearsay. We affirm the judgment of the district court.
Givens also claims that there was insuffi-" cient evidence to revoke his release. The government needed to prove violation of supervised-release terms only by a preponderance of the evidence. It was within the discretion of a district court to consider Queen’s testimony — whether or not the proceedings included the hearsay evidence possibly undermining Queen’s credibility— sufficient evidence that Givens assaulted Queen.
In short, district courts may or must exclude most hearsay evidence from trials. Although revocation-of-release hearings need not follow the inflexible procedural rules of trials, the flexibility of administrative-hearing procedures, such as those for revoking release, makes following the hearsay rules a safe harbor — not required, but virtually always an appropriate exercise of discretion.
In this case, Queen’s testimony may not have been as reliable as Givens’s — but that was an evidentiary argument for the adjudicator to consider. See Taylor v. United States Parole Comm’n, 734 F.2d 1152, 1155 (6th Cir.1984) (“Our concern in this case is with the paucity of reliable evidence of petitioner’s criminal conduct and not with the hearsay nature of the evidence *474 which was presented.”). The district court did consider the relative trustworthiness of the witness and other sources of evidence, and so fulfilled its statutory and constitutional mandate. For the foregoing reasons, we affirm the judgment of the district court.