**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Demetrius SMITH, Defendant–**
**Appellant.**

**No. 15–3181.**

United States Court of Appeals,
Sixth Circuit.

Feb. 1, 2016.

BEFORE: MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

## OPINION

JULIA SMITH GIBBONS, Circuit Judge.

Demetrius Smith appeals his 24–month sentence for violation of his supervised release. While on supervised release, Smith was convicted of a state assault charge, which violated the terms of his supervised release. The district court sentenced Smith to the statutory maximum of 24 months' imprisonment, although the Guidelines range was 7 to 13 months' imprisonment. Smith argues that this sentence is both procedurally and substantively unreasonable, because the district court failed to provide him notice of its intent to grant an upward departure and allegedly failed to consider the pertinent 18 U.S.C. § 3553(a) factors. We affirm.

## I.

In 2009, Demetrius Smith pled guilty to Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). During sentencing, the district court varied downward and sentenced Smith to 60 months' imprisonment and 3 years' supervised release.[1]

Smith was released from prison and his term of supervised release began on May 30, 2013. On August 7, 2014, Smith's probation officer petitioned the court to revoke his supervised release for failing to abide by the condition that he not commit another federal, state, or local crime. Specifically, Smith was found guilty of misdemeanor assault in violation of § 2903.13 of the Ohio Revised Code, and the state court sentenced him to 180 days in jail with 90 days suspended and two years of electronically monitored house arrest. Smith pled guilty to the violation on November 6, 2014, and the district court held the matter of sentencing in abeyance pending Smith's performance on supervised release. Ultimately, on February 11, 2015, the district court revoked Smith's supervised release and sentenced him to 24 months' imprisonment with no supervised release to follow.

The assault underlying Smith's violation was captured on videotape, which the district court viewed and marked as an exhibit during the February 11 hearing. On October 24, 2013, Smith went to pick up his girlfriend, Deja Armstrong, from work at a local bar. Brittney Anderson, who had been romantically involved with Ms. Armstrong while Smith was imprisoned, was sitting at the bar. According to Smith, Ms. Anderson "took a very aggressive posture" and "was looking to have a confrontation with him." DE 69, Nov. 6 Tr. at 8, Page ID 153. From review of the surveillance video, however, it does not appear that Ms. Anderson "stepped to [Smith] like a man," as Smith claimed during the November 6 hearing. *See id.* Rather, Smith approached Ms. Anderson, who was sitting at the bar. After they speak for approximately one minute, Smith walks away, but quickly returns to strike

---

1. At sentencing, Smith's Guidelines range was 84 to 105 months' imprisonment.

Ms. Anderson in the face.[2] In response, Ms. Anderson throws her drink at Smith and picks up a chair and holds it behind her. Still holding the chair, Ms. Anderson then backs up across the room as Smith approaches her. Ms. Anderson next pushes Smith with one arm, while still holding the chair with her other arm. Smith responds by punching Ms. Anderson in the face with such force that Ms. Anderson immediately falls to the floor. Smith stands over Ms. Anderson for several seconds before walking to the bar to retrieve her cell phone, which he throws across the room at her as she lay on the floor. The video ends shortly thereafter. Ms. Anderson sustained a broken nose and fractured eye orbital, which required reconstructive surgery.

The probation officer classified the violation as Grade C, which with Smith's Criminal History Category of V, resulted in a Guidelines range of 7 to 13 months. Based on the videotape evidence, the Government argued that the court should reclassify the incident as a Grade A violation because the video depicted "a textbook example of a crime of violence." DE 75, Feb. 11 Tr. at 10, Page ID 195. A shift to Grade A would have increased Smith's Guidelines range to 30 to 37 months' imprisonment. The district court ultimately declined to reclassify Smith's violation.

In addition to viewing the videotape, the district court heard that Smith had failed to attend several probation and anger management sessions. To his credit, Smith had attended a substance abuse assessment and several anger management counseling sessions, and he was in compliance with his state court electronic monitoring. The court also heard from Smith's counsel, who presented mitigation: Smith's girlfriend had recently given birth to their child, Smith had secured gainful employment, and he was passing all of his drug screenings.

After the Government and Smith concluded their arguments, the district judge stated that "seeing this video changes my impression totally of Mr. Smith's conduct" and "I'm even more offended by the fact that at the last hearing, the argument was made that the victim was the aggressor in the relationship." *Id.* at 26, Page ID 211. The district judge remarked that she has a duty to protect the public, a duty to punish people, and a duty to rehabilitate offenders. She further recognized that in sentencing Smith for the underlying offense, she had deviated by a third in sentencing him to sixty months' imprisonment rather than the ninety months requested by the probation officer. In consideration of Guidelines § 7B1.4 Application Note 4,[3] the court revoked Smith's supervised release and departed upward in sentencing him to 24 months' imprisonment. Smith timely appealed.

## II.

### A.

A district court may revoke a defendant's term of supervised release and sentence him to a new term of imprisonment. *United States v. Polihonki,* 543 F.3d 318, 322 (6th Cir.2008). We review sentences imposed following revocation of supervised

---

**2.** The Government asserts that "Smith sucker punched Ms. Anderson in her face," Appellee Br. at 4, whereas Smith contends that "the video shows him swatting at her hair." DE 75, Feb. 11 Tr. at 25, Page ID 210. The more plausible interpretation of the events depicted in the videotape is that Smith hit Ms. Anderson in the face at this point.

**3.** § 7B1.4 Application Note 4 provides as follows: "Where the original sentence was the result of a downward departure ... an upward departure may be warranted."

release under the abuse of discretion standard. *See, e.g., United States v. Givens,* 786 F.3d 470, 471 (6th Cir.2015). The ultimate reasonableness of a criminal sentence has both a procedural and a substantive component. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Melton,* 782 F.3d 306, 312–13 (6th Cir.2015). In this case, Smith challenges his sentence on both procedural and substantive grounds.

In reviewing for procedural reasonableness, we will find that a district court has abused its discretion if it "commit[s] [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall,* 552 U.S. at 51, 128 S.Ct. 586.

In determining whether a sentence is substantively reasonable, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* Substantively reasonable sentences are "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell,* 516 F.3d 503, 512 (6th Cir.2008) (internal quotation marks and citations omitted). "District courts enjoy discretion in sentencing," *United States v. Guthrie,* 557 F.3d 243, 256 (6th Cir.2009), and how a district court chooses to balance the applicable sentencing factors is beyond the

scope of our review. *United States v. Ely,* 468 F.3d 399, 404 (6th Cir.2006). Even "if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall,* 552 U.S. at 51, 128 S.Ct. 586.

### B.

■ Smith argues that the district court erred when it departed upward from the Guidelines range without giving him notice as provided under Federal Rule of Criminal Procedure 32(h).

Rule 32, on "Sentencing and Judgment," provides in relevant part as follows:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed.R.Crim.P. 32(h). In this case, the district court imposed an upward departure [4] and gave no notice of its intent to do so. In addition to the notice requirement, Rule 32 states other procedural requirements, including the presentence investigation and report, adequate time to object to the presentence report, and a defendant's opportunity to speak prior to the court imposing sentence.

In contrast, procedures for revocation of supervised release are generally governed by Federal Rule of Criminal Procedure

---

4. A "departure results from the district court's application of a particular Guidelines provision." *United States v. Grams,* 566 F.3d 683, 686 (6th Cir.2009). The district court applied U.S.S.G. § 7B1.4 Application Note 4, which provides as follows: "Where the original sentence was the result of a downward departure ... an upward departure may be warranted." *See supra* note 3 and accompanying text.

32.1. Rule 32.1, entitled "Revoking or Modifying Probation or Supervised Release," provides a defendant several procedural protections, including a revocation hearing, written notice of the alleged violation, disclosure of evidence, the opportunity to present evidence, notice of the right to counsel, and the opportunity to make a statement and present mitigation. Fed. R.Crim.P. 32.1(b)(2). Unlike Rule 32(h), Rule 32.1 on its face contains no requirement for advance notice before a district court may depart from the applicable Guidelines range. Based on the plain and clear meaning of the Rules, therefore, a district court does not commit a "significant procedural error" by failing to give notice of its intent to depart upward in sentencing for a violation of supervised release. *See Gall,* 552 U.S. at 51, 128 S.Ct. 586.

In a prior unpublished decision, this court decided that Rule 32(h)'s notice requirement does not extend to sentences for revocation of supervised release. *United States v. Baker,* 521 Fed.Appx. 371, 374 (6th Cir.2013) ("[T]he notice requirement associated with a departure under Fed. R.Crim.P. 32(h) does not apply to a probationary setting such as a revocation of supervised release."). Many of our sister circuits have likewise concluded that Rule 32(h) does not apply to sentences for revocation of supervised release. *See, e.g., United States v. Harris,* 382 Fed.Appx. 145, 146 (3d Cir.2010); *United States v. Gonzalez,* 275 Fed.Appx. 378, 379 (5th Cir. 2008); *United States v. Leonard,* 483 F.3d 635, 638–39 (9th Cir.2007); *United States v. Ryans,* 237 Fed.Appx. 791, 793 (4th Cir.2007); *United States v. Redcap,* 505 F.3d 1321, 1323 (10th Cir.2007).

Smith argues that the aforementioned cases rely on case law established prior to the Supreme Court's ruling in *United States v. Booker,* 543 U.S. 220, 125 S.Ct.

738, 160 L.Ed.2d 621 (2005), that all sentencing Guidelines are advisory. *See Ryans,* 237 Fed.Appx. at 793 ("Pre-*Booker,* courts agreed that no notice of intent to depart was required in revocation proceedings because the policy statements in Chapter 7 are merely advisory."). Smith asserts that post-*Booker,* "no sound reason exists to treat supervised release revocation differently from imposition of an initial sentence." Appellant Br. at 5. Smith further makes the policy argument that because for both sentencings and supervised release revocations, "a trial court is required to calculate an offense level and a criminal history category," and because "[a] defendant is no less adversely impacted by the imposition of a prison sentence following supervised release revocation than he is by incarceration following a guilty finding as to the underlying offense," Rule 32(h) must apply to supervised release hearings. *See id.*

We disagree with Smith's reasoning. Rule 32.1 has not been amended in the ten years since *Booker* to include a notice requirement. In addition, this circuit's opinion in *Baker* was issued well after *Booker* and our sister circuits have expressly considered whether Rule 32(h) should be applied to supervised release revocations in light of *Booker*'s pronouncement regarding the advisory nature of the Guidelines. *See, e.g., Harris,* 382 Fed.Appx. at 146 ("Rule 32(h) remains in full force notwithstanding that, under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), all sentencing guidelines must be considered advisory, rather than mandatory."). Rules 32 and 32.1 provide different procedural protections. For example, whereas the district court must complete a presentence investigation report for an original sentencing, there is no requirement that the district court investigate to the same extent the alleged violation of supervised release. *Compare* Fed.

R.Crim.P. 32(c)-(g), *with* Fed.R.Crim.P. 32.1. The framers of the Rules clearly imagined different proceedings for sentencings and supervised release violations.

Smith's argument that "nothing in Rule 32(h) creates a specific exemption for revocation proceedings" further misses the mark. *See* Appellant Reply Br. at 2. Textually, there is nothing in Rule 32 that would extend the rule beyond the scope of its title, "Sentencing and Judgment." Moreover, during sentencing, the district court is not always required to provide advance notice; it is only when the court does so "on a ground not identified for departure either in the presentence report or in a party's prehearing submission." *See* Fed.R.Crim.P. 32(h). There is no presentence report and often no prehearing submission for violations of supervised release. *See* Fed.R.Crim.P. 32.1. Not only would Smith have this court apply Rule 32(h) beyond its plain meaning, but he would have the court rewrite the rule in order for it to sensibly apply to supervised release hearings. Quite simply, the text of the Rules is clear. The district court committed no procedural error in sentencing Smith to the statutory maximum punishment of 24 months' imprisonment without providing advance notice of its intent to upward depart from the Guidelines.

### C.

■ Smith argues that his sentence is substantively unreasonable because the district court failed to consider all the § 3553(a) factors, particularly his behavior while on supervised release. Smith contends that the district court "focus[ed] instead solely on its perceived role in protecting the public." Appellant Brief at 8.

In short, Smith's sentence is substantively reasonable. "A district court need not recite [the] § 3553(a) factors, nor engage in the ritual incantation of the factors in order for the appellate court to affirm a sentence." *United States v. Jeross,* 521 F.3d 562, 583 (6th Cir.2008) (internal quotation marks and citations omitted). At the same time, however, the district court is prohibited from selecting the sentence arbitrarily and must consider the pertinent § 3553(a) factors. *Vowell,* 516 F.3d at 510. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51, 128 S.Ct. 586. However, Smith urges us to do exactly that: to substitute our judgment for that of the district court.

The district court adequately explained the § 3553(a) factors and did not abuse its discretion in imposing the statutory maximum sentence. The district court heard evidence from Smith that he had attended some of his anger management counseling sessions, that his girlfriend had recently given birth to his child, and that he had secured employment. The district court also viewed videotape evidence of the assault perpetrated by Smith. Although the district judge did not recite the § 3553(a) factors by name, she did reflect that she had duties to protect, punish, and rehabilitate. The district judge's reference to rehabilitating Smith clearly reflected § 3553(a)(1), which directs courts to consider "the history and characteristics of the defendant."

Smith's argument that the district judge failed to consider the sentencing factors is really an argument that the district court failed to weigh the factors in the manner most favorable to Smith. It was well within the district judge's discretion to weigh Smith's violent characteristics more heavily than his recent status as a father and an employed citizen. The district court's determination that rehabilitation "didn't work with Mr. Smith" reflects the court's

consideration of the violent nature of the assault on Ms. Anderson, and perhaps Smith's somewhat disingenuous mischaracterization of the assault during the November 6, 2014 supervised release hearing. DE 75, Feb. 11 Tr. at 26–27, Page ID 211–12 ("I'm even more offended by the fact that at the last hearing, the argument was made that the victim was the aggressor in the relationship. Nothing could be further from the truth."). In other words, the district court's recognition that rehabilitation "didn't work with Mr. Smith" demonstrates that the district court did take into account the pertinent § 3553(a) factors, but Smith's assault on Ms. Anderson outweighed Smith's recent employment and fatherhood. The district court acted within its discretion in finding that the most important factor in this case was the protection of society. *See* 18 U.S.C. § 3553(a)(2)(C).

## CONCLUSION

For the reasons stated herein, the defendant's sentence is affirmed.