**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0095n.06

**No. 16-5636**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 06, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

JOSEPH IVY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: GUY, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In 2010, while on supervised release for an earlier drug offense, defendant Joseph Ivy admittedly possessed and intended to distribute a brick of cocaine. The district court issued a warrant for Ivy's arrest for the supervised-release violation within weeks of the offense, but authorities did not execute the warrant until 2016, after Ivy completed his interim prison sentence. Defendant contends this delay violated his right to appear before the court "without unnecessary delay" under 18 U.S.C. § 3606, and to due process under the Fifth Amendment. We disagree and affirm the district court's judgment.

I.

Ivy's history with the federal corrections system began in 2002, when he pleaded guilty to possession with intent to distribute cocaine in the Northern District of Illinois. The district

court sentenced Ivy to 88 months' imprisonment followed by five years' supervised release. Ivy began supervised release in 2007. As a condition of his release, the court required Ivy to refrain from committing "any other state, federal or local offense[]." In 2008, the court transferred jurisdiction over defendant's case to the District Court for the Eastern District of Kentucky.

Over the next two years, defendant violated the terms of his release four times. The fourth incident—which occurred during an August 2010 traffic stop in California—is most relevant to the instant appeal. Chula Vista police pulled Ivy over for "making an unsafe turning movement" and decided to search his vehicle when a police dog tipped them off to the presence of narcotics. They recovered a brick of cocaine Ivy had concealed under the passenger's seat. On September 30, 2010, the United States charged defendant with possession with intent to distribute cocaine in the Southern District of California. The California district court ordered Ivy detained pending resolution of the charge.

Back in the Eastern District of Kentucky, Ivy's probation officer learned of the California charge and petitioned the district court for a warrant for defendant's arrest on October 21, 2010. Citing "defendant's continued blatant disregard for the conditions imposed by the court, as well as the serious nature of the current violation," he further recommended the court revoke Ivy's supervised release. The court granted the petition and issued the warrant that same day, although, at the time, defendant remained in federal custody in California.

In September 2011, Ivy pleaded guilty to the drug charge and the District Court for the Southern District of California sentenced him to 77 months' imprisonment. According to lower-

court filings, it appears Ivy served at least a portion of his prison sentence at a corrections facility in Ashland, Kentucky. At some point, however, Ivy relocated to West Virginia.[1]

There, on April 4, 2016, authorities executed the October 2010 warrant and arrested Ivy for violating the terms of his supervised release. Defendant made his initial appearance before the District Court for the Northern District of West Virginia that same day. He returned to court on April 6 for a combined detention hearing and hearing to confirm his identity. Upon finding that "Joseph Ivy is the Defendant's true identity," the court remanded him to the United States Marshals Service and transferred his case back to the Eastern District of Kentucky.

Defendant made his initial appearance before the lower court on April 26, 2016, and "was largely uncooperative during the hearing." The district court appointed Ivy standby counsel and remanded him to federal custody pending determination of his release violation. It scheduled a continued initial appearance and preliminary hearing for April 29, 2016.

At the April 29 hearing, the district court found probable cause to believe defendant had violated the terms of his supervised release based on the testimony of Ivy's probation officer and records of his conviction from the Southern District of California. The court held a final revocation hearing on May 4, 2016, where, after presentation of similar proofs, defendant's counsel acknowledged the evidence was "clear to establish that Joseph Ivy has violated the terms of his supervised release with [the California] conviction." The district court agreed and proceeded to allocution. It sentenced Ivy to 36 months' imprisonment, followed by another five years' supervised release. Defendant timely appealed.

---

[1]The record does not disclose whether the federal Bureau of Prisons transferred defendant to a West Virginia corrections facility, or whether Ivy traveled there independently after being released on probation.

II.

Ivy contends the near-six-year delay between the issuance of the warrant (October 21, 2010) and his initial appearance before the district court (April 26, 2016) violated his right to an appearance "without unnecessary delay," as guaranteed under 18 U.S.C. § 3606 and the Due Process Clause. Defendant agrees that because he failed to assert either issue before the district court, we review his claim for plain error. *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013). "Under the plain-error lens," the defendant must demonstrate (1) error, (2) that is plain, (3) that affects his substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 601 (citation omitted). "Meeting all four prongs is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)). Ivy fails at each of them.

A.

Regarding the first two prongs, Ivy has not established error—plain or otherwise.

The Supreme Court's decisions in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Moody v. Daggett*, 429 U.S. 78 (1976), largely resolve Ivy's appeal. *Morrissey* "begin[s] with the proposition" that parolees facing revocation do not enjoy the "full panoply of rights" normally due to defendants facing criminal charges. 408 U.S. at 480. This is so because revocation deprives the parolee—or in this case, the individual on supervised release—"not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent" on his compliance with certain restrictions. *Id.*; *see also United States v. Givens*, 786 F.3d 470, 472 (6th Cir. 2015) (noting that *Morrissey* applies to "revocation-of-supervised-release cases"). Thus, "the idea of *Morrissey* was to provide *some* process to the would-be prisoner," but process

short of that afforded to the accused at trial. *Givens*, 786 F.3d at 472. At minimum, this process must include: (1) a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his supervised release; and (2) a revocation hearing to make a "final evaluation" of the facts and consider "whether the facts as determined warrant revocation." *Morrissey*, 408 U.S. at 485, 487–88; *see also* Fed. R. Crim. P. 32.1(b) (codifying the requirements of *Morrissey*).

Ivy argues the district court's issuance of the October 2010 warrant triggered his right to timely revocation proceedings under *Morrissey*, or at least his right to an initial appearance before the district court "without unnecessary delay." 18 U.S.C. § 3606.[2] Postponing his appearance for nearly six years was, according to Ivy, both "unnecessary," and contrary to due process, especially given that he served a portion of his California sentence in a Kentucky corrections facility. But Ivy focuses on the wrong time period. When a defendant's "confinement and consequent liberty loss" is due to an intervening criminal conviction—and not arrest on a warrant for violating his supervised release—"there is no requirement for an immediate hearing." *Moody*, 429 U.S. at 86–87.

The *Moody* Court considered whether a "*Morrissey*-type hearing . . . must be held . . . before the parolee is taken into custody as a parole violator." *Id.* at 86. The petitioner in *Moody* shot and killed two people while on parole for an unrelated conviction. *Id.* at 80. He pleaded

---

[2]Neither *Morrissey* nor § 3606 actually guarantee the right to an "initial appearance." That right is secured by Federal Rules of Criminal Procedure 32.1 and 40, which govern revocation of supervised release for defendants arrested in and outside the supervising jurisdiction, respectively. *See* Fed. R. Crim. P. 32.1 & 40. However, some of the initial-appearance rights specified in Rule 32.1 overlap with those in *Morrissey*, such as the right to notice of the alleged violation and the right to fact-finding by an independent court officer. *Compare* Fed. R. Crim. P. 32.1(a)(3), *with* 408 U.S. at 485–86. Defendant also grounds his due process argument in *Morrissey*. His initial appearance claim is therefore analyzed pursuant to *Morrissey* and its progeny.

guilty to manslaughter and second-degree murder and received two concurrent ten-year sentences. *Id.* Both crimes "constituted obvious violations" of the petitioner's parole. *Id.* After Moody's incarceration for the homicides, the United States Parole Board issued, but declined to execute, "a parole violator warrant" for his arrest. *Id.* Moody requested that the Board execute the warrant immediately so that any imprisonment for his parole violation could run concurrently with his homicide sentences, but the Board refused. *Id.* at 80–81. He sought habeas relief on the theory that the Board denied him a timely hearing in violation of the due process protections articulated in *Morrissey*. *Id.* at 81.

The Supreme Court disagreed. It dismissed the petitioner's argument as a misreading of its earlier decision:

> Indeed, in holding that "(t)he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," *Morrissey*, 408 U.S. at 488, we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, *for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant*.

*Id.* at 87 (emphasis added) (citation omitted). Moody was not entitled to a preliminary hearing on his parole violation because he had not been "taken into custody under the [parole violator] warrant." Rather, he had been taken into custody for "his two . . . homicide convictions." *Id.* at 86. Under these circumstances, the "due process rights as outlined by the Supreme Court in *Morrissey* . . . have not [yet] vested." *Santiago-Fraticelli v. Thoms*, No. 99-6178, 2000 WL 924602, at *1 (6th Cir. June 26, 2000).

Consistent with *Moody*, § 3606 also makes execution of the warrant the "operative event triggering" the defendant's right to be brought before the district court "without unnecessary delay." *See* 429 U.S. at 87 (first quotation); 18 U.S.C. § 3606 (second quotation). It states, "[i]f there is probable cause to believe that a . . . person on supervised release has violated a condition

of his . . . release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him." 18 U.S.C. § 3606. Federal Rule of Criminal Procedure 32.1(a)(1) runs according to the same timeline, stating that an individual "held in custody for violating . . . supervised release must be taken without unnecessary delay before a magistrate judge."

Ivy's case is on all fours with *Moody*. Defendant complains that he "had been in federal custody since August 31, 2010," but this confinement was due to his California drug conviction, not the warrant for violating his supervised release. "[T]he loss of liberty" for the supervised-release violation did not occur until Ivy was "taken into custody under the warrant" on April 4, 2016. *Moody*, 429 U.S. at 87. Only then, "upon arrest," did defendant have the right to an appearance before the district court "without unnecessary delay," 18 U.S.C. § 3606, followed by a hearing to determine whether he "ha[d] in fact breached the conditions" of his supervised release. *Morrissey*, 408 U.S. at 483–84; *see also Moody*, 429 U.S. at 86–87.

In this case, Ivy has not shown a violation of either right. Defendant had not one, but *two* initial appearances—the first of which occurred in the Northern District of West Virginia on the day he was arrested. Two days later, on April 6, the court conducted a combined detention and identity hearing, and transferred defendant's case to the Eastern District of Kentucky as required under Rule 32.1. *See* Fed. R. Crim. P. 32.1(a)(5)(B) & (a)(6). Ivy then made an initial appearance before the Kentucky district court on April 26, where the court advised him of his rights and appointed him provisional counsel. He participated in a preliminary hearing on April 29, and a final revocation hearing on May 4. Thus, within a month of defendant's April 4, 2016, arrest, the district court wholly resolved the revocation proceedings. One month is not "unreasonable" for a typical revocation case, much less a case involving the delay attendant to an

out-of-state arrest. *See Morrissey*, 408 U.S. at 488 ("A lapse of two months" between the defendant's arrest and his revocation hearing does "not appear . . . unreasonable.").

B.

Apart from *Moody*, we have held that a "defendant's due process concerns" over delayed revocation proceedings "come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation." *United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996). The delay in this case did not. While released on conditions prohibiting further criminal activity, defendant admittedly possessed and intended to distribute cocaine in the Southern District of California. After the government presented a copy of the conviction at his revocation hearing, Ivy's counsel agreed there was no "reasonable way to dispute" the "clear" evidence that "Joseph Ivy has violated the terms of his supervised release," and Ivy does not challenge the district court's finding to that effect on appeal.[3]

These same facts foreclose Ivy's success on the third prong—that the error affected his substantial rights, "which in the ordinary case means . . . it 'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The government's delay here did not affect the outcome of the district court proceedings. Ivy's California conviction was nearly five years old by the time of his

---

[3]Defendant contends he was prejudiced because the government's wait cost him "the opportunity of a concurrent or partially concurrent sentence." Yet Ivy "cites no authority for the proposition that a delay that may affect one's ability to serve sentences concurrently either implicates due process or violates the provisions of" § 3606. *Throneburg*, 87 F.3d at 853. "Multiple terms of imprisonment imposed at different times" are presumed to run consecutively, "unless the court orders that the terms are to run concurrently," 18 U.S.C. § 3584(a), and "we are aware of no constitutionally cognizable right to concurrent, rather than consecutive, sentences," *United States v. White*, 240 F.3d 127, 135 (2d Cir. 2001); *United States v. Dovalina*, 711 F.2d 737, 739 (5th Cir. 1983). Defendant's preference for a concurrent sentence does not grant him a "due process right to force a revocation decision" before the time of his arrest. *Cotten v. Davis*, 215 F. App'x 464, 467 (6th Cir. 2007) (per curiam).

2016 revocation hearing—but as defense counsel agreed, it was still "clear" proof that Ivy had violated the terms of his supervised release.

## C.

"Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736) (brackets omitted). We are without that discretion here, where the above three prongs are not satisfied, and there is no error to correct.

## III.

For the foregoing reasons, we affirm the district court's judgment.