NOT RECOMMENDED FOR PUBLICATON
File Name: 23a0204n.06

Case No. 21-6231

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Apr 28, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| KENYATTA T. JAMES, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: MOORE, CLAY, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** After finding that Kenyatta James violated the terms of his supervised release by unlawfully possessing a firearm, the district court revoked James's supervised release and sentenced him to two years' imprisonment followed by one year of supervised release. James appeals the revocation of his supervised release and the sentence imposed. For the following reasons, we AFFIRM.

I.

After James pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the district court imposed a 63-month sentence followed by a two-year term of supervised release. James's supervised-release conditions prohibited him from, among other things, committing crimes and possessing firearms.

On February 5, 2021, the Louisville Metro Police Department responded to a shooting after Danesha Hobbs reported the incident. Upon arrival, the victim, identified as Stephon Monroe (Hobbs's brother), was suffering from several gunshot wounds and was pronounced dead on the scene. Hobbs identified James as the person who shot her brother. In state court, James was charged with murder. In federal court, the United States Probation Office petitioned to revoke James's supervised release for illegally possessing a firearm.

James sought to delay his supervised-release revocation hearing pending the resolution of his state murder charge. The district court acquiesced to James's request, continuing the final revocation hearing originally set for May 14, 2021. The district court found that continuing the revocation hearing was reasonable.

James made a subsequent request to delay or remand the final revocation hearing, and he also requested certain discovery materials from the government. On October 19, 2021, James's counsel filed a discovery motion seeking written or recorded witness statements about the alleged offense and the warrant issued by the USPO detailing the grounds upon which it relied in seeking to revoke James's supervised release. The government denied that it possessed the requested statements.

On November 8, 2021, James filed a motion to dismiss the petition to revoke asserting that his revocation hearing was not held within a reasonable time in violation of *Morrissey v. Brewer*, 408 U.S. 471 (1972). He filed another discovery motion requesting the original warrant for his arrest for violating his supervised release and the original petition for revocation of his supervised release filed by the USPO. On November 17, 2021, the district court denied James's motion to dismiss the petition to revoke and his discovery motions.

The revocation hearing commenced on November 23, 2021. The government called two witnesses, Detective Chris Palombi, the lead detective in the state murder case, and Hobbs. Hobbs testified about the events and circumstances leading up to the altercation between James and Monroe. Specifically, Hobbs testified that she heard gunshots as she neared her brother's house and that when she arrived, James was "still shooting" and "still ha[d] his gun pointed." R. 337, PageID 1938. Hobbs explained how she was able to identify James as the person who shot her brother. A home security video also captured the shooting. After the shooting, Hobbs identified and signed a photograph of James during a recorded witness interview.

Det. Palombi testified that authorities seized James's cellphone when he was arrested on April 14, 2021. Based on data he received from the digital forensics unit through a call detail records ("CDR") report, James's cellphone pinged to a tower close to the crime scene. James moved to strike Det. Palombi's testimony because the government had not produced the CDR report, a photograph of James that Hobbs signed identifying him as the shooter, and the recording of Hobbs's witness interview. The district court ordered the government to produce the requested information and continued the revocation hearing.

The revocation hearing concluded on December 16, 2021. The district court found that the government proved that James possessed a firearm in violation of the terms of his supervised release. The district court imposed a two-year sentence, the statutory maximum for James's violation, due to the nature and circumstances of the offense, James's criminal history, the fact that James had violated his supervised-release conditions less than one year into his two-year term, and the fact that it was a repeated gun possession offense.

## II.

We review a district court's revocation of supervised release for abuse of discretion, *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007), "giving fresh review to its legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009) (citations omitted). "A district court abuses its discretion when it 'relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard.'" *United States v. Howard*, 644 F.3d 455, 458 (6th Cir. 2011) (citation omitted).

## III.

On appeal, James argues that: (1) the district court did not hold his revocation hearing within a reasonable time; (2) revocation of his supervised release was not supported by a preponderance of the evidence; (3) his sentence is procedurally unreasonable; and (4) his sentence is substantively unreasonable. We address each argument in turn.

## A.

James argues that the district court failed to hold his supervised-release revocation hearing within a reasonable time because the government delayed in providing him with discovery materials. Under Federal Rule of Criminal Procedure 32.1(b)(2), a district court must hold a revocation hearing "within a reasonable time." *See Moody v. Daggett*, 429 U.S. 78, 87 (1976). In revocation proceedings, defendants are entitled to: (1) written notice of the alleged violations; (2) disclosure of the evidence against the defendant; (3) an opportunity to appear, present evidence, and question adverse witnesses; (4) notice of the right to retain counsel or request appointment of counsel; and (5) an opportunity to make a statement and present mitigating evidence. Fed. R. Crim. P. 32.1(b)(2)(A)–(E). Indeed, disclosure of the evidence to be used against the defendant is among the minimum due process requirements a revocation hearing should afford. *See United*

*States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (citing *Morrissey,* 408 U.S. at 489); *United States v. Givens*, 786 F.3d 470, 472 (6th Cir. 2015) (noting that *Morrissey* applies to revocation hearings). Ultimately, James must show that the delay "prejudiced [his] ability to contest the validity of the revocation." *United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir. 1996).

For two reasons, James has not shown that the district court unreasonably delayed his revocation hearing resulting in prejudice. First, James requested delays of the revocation hearing primarily due to concerns about testifying at his revocation hearing while his murder charge remained pending in state court. The district court was mindful of its obligation to hold the revocation hearing within a reasonable time and balanced that with considering James's requests to defer the revocation hearing pending resolution of the state proceedings.

Second, the alleged failure of the government to produce the evidence against James did not prejudicially delay the revocation hearing. James filed his first motion for discovery on October 19, 2021. The discovery issue reached a boiling point during the November 2021 revocation hearing when the district court ordered the government to produce the materials requested by James that Det. Palombi mentioned during his testimony. Thereafter, the government produced the requested evidence. And when the revocation hearing resumed, James chose not to use the evidence or otherwise call witnesses. Thus, James has not shown that any delay in obtaining the evidence "prejudiced [his] ability to contest the validity of the revocation." *Id.* The government's failure to provide all of the evidence against James prior to the November 2021 hearing did not hinder his ability to contest the validity of the grounds for revocation—that he unlawfully possessed a firearm.

To the extent James argues that the seven-month delay in holding the final revocation hearing was unreasonable, we have found that similar delays were reasonable. *See id.* at 853–54

(finding that a delay of nearly two years did not prejudice the defendant); *United States v. Glowka*, 726 F. App'x 1013, 1018–19 (6th Cir. 2018) (five-month delay in holding final revocation hearing that arose due to defendant's concerns he would implicate himself in state proceedings if his federal hearing proceeded was reasonable and did not result in prejudice).

B.

James argues that the evidence presented at the revocation hearing was insufficient to prove that he violated his supervised release conditions. A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3). When considering whether the evidence meets the preponderance standard, we will "not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the [factfinder]." *United States v. Blakley*, 708 F. App'x 265, 268 (6th Cir. 2017) (quoting *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). To overturn the revocation order, we must have a "definite and firm conviction" that the district court's decision was "a clear error of judgment." *United States v. Dobson*, 529 F. App'x 536, 538 (6th Cir. 2013) (quoting *Stephenson*, 928 F.2d at 732).

The district court found that despite any inconsistencies in Hobbs's testimony, her identification of James as the individual who shot her brother, her nearly contemporaneous 911 call about the shooting, and the video footage of the incident "far more . . . corroborate[d] each source of evidence than call[ed] it into question." R. 346, PageID 2053. The district court did not clearly err in finding that James unlawfully possessed a firearm. On appeal and below, James calls into question the lack of documentary evidence supporting Det. Palombi's testimony.[1] He also

---

[1] James questions the validity of Det. Palombi's testimony based on a work-related issue leading to his termination. The scope of appellate review is limited to the evidence established in the record before the district court at the time of its ruling. *See* Fed. R. App. P. 10(a). Federal Rule of Appellate Procedure 10(e)(2) does not permit parties "to

attacks Hobbs's credibility. But we are not permitted to weigh the evidence, nor can we consider witness credibility. *Blakley*, 708 F. App'x at 268.

We thus conclude that the district court did not abuse its discretion in revoking James's supervised release.

C.

We review James's sentence for procedural reasonableness, which is satisfied as long as "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Denny*, 653 F.3d 415, 423 (6th Cir. 2011). The sentencing court has an "obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence" in order "to permit reasonable appellate review." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). The province of determining the degree of explanation lies with the district court "because 'the amount of reasoning required varies according to context.'" *United States v. Jeross*, 521 F.3d 562, 582–83 (6th Cir. 2008) (citation omitted).

James argues that the district court failed to consider the § 3553(a) factors and failed to adequately explain the sentence it imposed. We disagree. The district court considered the § 3553(a) sentencing factors, "includ[ing] the nature and circumstances of the offense, which were

---

introduce new evidence in the court of appeals." *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005) (quoting *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003)). Because evidence regarding Det. Palombi's termination was not before the district court at the time of its ruling, we may not consider the evidence James presents because it is not a part of the appellate record. *See* Fed. R. App. P. 10(a); *Clark v. Warden*, 934 F.3d 483, 490 (6th Cir. 2019) (noting the "normal rule that the appellate record consists only of the evidence before the district court at the time of its ruling").

of the utmost seriousness, the history and characteristics of the defendant, which, obviously, must account for the criminal history . . . , the relatively short period of time the offense happened following his release from prison, [and] the fact that this was a repeated gun possession offense." R. 346, PageID 2062. The district court also accounted for "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment and adequate deterrence." *Id*. The district court explained that "the circumstances of [the] shooting were as serious as they come, and there's no basis to downplay the danger that this gun possession carried and appear[ed] to have actually caused." *Id*. The district court also discussed other § 3553(a) factors and determined that upon consideration of the § 3553(a) factors "and the nature of the evidence before the [c]ourt . . ., the maximum sentence of two years [was] the most appropriate term." *Id*. at 2062–63.

Moreover, the district court stated that the two-year sentence was "sufficient but not greater than necessary to account for the purposes of the sentencing laws." *Id*. at 2063. To provide an adequate explanation, a district court must satisfy us that it "has considered the parties' arguments and has a reasoned basis" for the sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007). After considering the pertinent § 3553(a) factors, the district court sufficiently explained the reasons for imposing the sentence in this case.

D.

James also challenges the substantive reasonableness of his sentence. Pursuant to 18 U.S.C. § 3583(e), upon revocation of supervised release, a district court may impose a new term of imprisonment after considering the relevant § 3553(a) factors. *United States v. Sears*, 32 F.4th 569, 574 (6th Cir. 2022); *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008).

A substantive reasonableness challenge focuses on the length of a sentence. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). To succeed, a defendant must show that "the court placed too much weight on some of the § 3553(a) factors and too little on others[.]" *Id*. The weighing of the § 3553(a) factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id*. (quoting *Gall*, 552 U.S. at 51). James argues the court placed "far too much weight on the seriousness of the allegation, arbitrarily choosing a sentence well above the Guidelines range." D. 21 at p. 30. We disagree.

The district court varied upward from the advisory Guidelines range of 12–18 months' imprisonment and imposed the statutory maximum of 24 months' imprisonment. The offense conduct was an important factor in the district court's decision to vary upward. The district court reasonably concluded that the nature and circumstances of possessing the gun and allegedly killing someone were "of the utmost seriousness." R. 346, PageID 2062. But that was not the only consideration. The district court also considered "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment and adequate deterrence." *Id*. at 2062. The court also took into account the short period of time that James was on supervised release before he violated his release conditions. "A district court's attach[ing] [of] great weight to a few factors does not constitute reversible error, and inevitably, [n]ot all § 3553(a) factors are important in every sentencing; often one or two prevail, while others pale." *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (alterations in original; internal citations and quotations omitted). Based on the offense conduct—a repeated gun possession offense—it is unsurprising that the district court placed more weight on the nature and

circumstances of the offense than other factors. But the district court did not err in doing so, and it did not abuse its discretion in varying above the Guidelines range.

IV.

For the foregoing reasons, we AFFIRM.