RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GEORGE EDWARD CLARK,

　　　　　　　　　　　*Petitioner-Appellee*,

*v.*

NOAH NAGY, Warden,

　　　　　　　　　　　*Respondent-Appellant*.

No. 18-1885

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-11959—Victoria A. Roberts, District Judge.

Argued:  May 10, 2019

Decided and Filed:  August 12, 2019

Before:  BOGGS, BATCHELDER, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  Linus Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Brandy H. Ranjan, JONES DAY, Columbus, Ohio, for Appellee. **ON BRIEF:**  Linus Banghart-Linn, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Brandy H. Ranjan, Tiffany D. Lipscomb-Jackson, Alexandra L. Schill, JONES DAY, Columbus, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

　　　JANE B. STRANCH, Circuit Judge.  Petitioner George Clark was found guilty of murder in 2003.  The case against him hinged on the preliminary testimony of a single eyewitness who,

during the trial, refused to verify her incriminating statements. She has since recanted. This motion for habeas relief is premised on an exculpatory affidavit from another purported eyewitness to the crime—one who states that her father, a city police detective, told her not to report what she had seen. Clark was granted permission to file a second or successive habeas petition in light of the alleged suppression of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court considered the claim and, without holding an evidentiary hearing, granted a conditional writ of habeas corpus. *See Clark v. Nagy*, No. 2:16-cv-11959, 2018 WL 3239619, at *8 (E.D. Mich. July 3, 2018). An evidentiary hearing is necessary to determine both whether Clark has made out a *Brady* violation and whether the requirements of § 2244(b)(2)(B) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) are satisfied. We therefore **REVERSE** the district court's decision and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Trial and Post-Conviction Proceedings

In 2003, George Clark and Kevin Harrington were jointly tried in a Michigan state court for the murder of Michael Martin. The only evidence connecting Clark to the crime was the preliminary testimony of Martin's neighbor, Bearia Stewart. But when she was called to the stand, Stewart would not say what she had seen the day of the murder. The prosecutor asked if she was afraid or nervous; she responded she was not. Stewart agreed that she had been threatened but would not say by whom. The prosecutor attempted to refresh her recollection with her testimony from preliminary examinations, but Stewart would not ratify her earlier statements. As a result, the judge declared Stewart unavailable and had her preliminary testimony, including cross-examinations, read to the jury. Clark's attorney, who had not been counsel of record during the preliminary proceedings, was not permitted to cross-examine Stewart.

At Clark's preliminary hearing, Stewart testified as follows. She was behind her house when she saw Clark and Harrington drive up to Martin's porch. The men began to argue and then to fight, with Clark punching Martin. Clark and Harrington "dragged" Martin away through

a nearby field toward the woods. As Stewart returned inside, she heard gunshots coming from the direction Martin had been taken. Clark and Harrington then came to her locked back door and said they would kill her if she said anything. Harrington was holding a gun at the time. At Harrington's preliminary hearing, she described the same general sequence of events with some alterations—for example, she locked her door before she heard the gunshots, she opened the door when the defendants returned to her home, and Clark was holding the gun.

The prosecution's theory of the case was that Stewart had been cowed into silence by the defendants' threats the night of the murder.[1] The defense, however, posited a different aggressor. During cross-examination, Detective Anthony Abdallah was asked about allegedly threatening comments he made while interviewing Stewart. He responded: "What I said was that if you're gonna—if you're gonna not tell us exactly what happened, and if you're gonna interfere with this homicide investigation, we'll lock you up, and I will have to call Social Services and have 'em pick up your kids 'cause I'm not gonna babysit 'em." (R. 15-6, PageID 802–03)

Stewart's testimony was critical because no physical evidence connected Clark to the crime. What physical evidence there was arguably undercut Stewart's story: the medical examiner testified that there were no marks on Martin's body consistent with being beaten or dragged. The only other evidence implicating Clark was Tammy Wiseman's testimony that Clark told her to say that she and Stewart were together the night of the murder—which, according to Wiseman, was not true. The State spent approximately half of its 14-page closing argument summarizing and discussing Stewart's testimony. A toxicology report showing Martin had cocaine in his system was mentioned in passing, and Wiseman merited a single paragraph. No other evidence was discussed. The State returned to Stewart's testimony for the final six pages of its nine-page rebuttal.

---

[1]During Clark's direct appeal, the Michigan appellate court stated that the record "reflect[ed] that Stewart was threatened while testifying at defendant's preliminary examination by a woman who drew her finger across her throat." *People v. Clark*, No. 247847, 2005 WL 991619, at *1 n.3 (Mich. Ct. App. Apr. 28, 2005) (per curiam). We are aware of no trial testimony supporting this claim. During oral argument, the State affirmed that the threats it relied upon were those allegedly made by Clark and Harrington the night of the murder. Oral Arg. at 1:50–2:11, *Clark v. Nagy*, No. 18-1885 (6th Cir. May 10, 2019).

The jury found both Clark and Harrington guilty of first-degree murder, and Clark was sentenced to life imprisonment without parole. Both defendants moved for a new trial. Clark's motion was denied, as was his direct appeal. *See People v. Clark*, No. 247847, 2005 WL 991619, at *1 (Mich. Ct. App. Apr. 28, 2005) (per curiam). Harrington's motion was granted based on misconduct of his trial counsel. *Id.* at *1 & n.1. According to Clark's statement in a prior habeas petition, Harrington was tried three additional times. *See Clark v. Romanowski*, No. 08-10523, 2010 WL 3430782, at *9 n.4 (E.D. Mich. Aug. 30, 2010), *aff'd*, 472 F. App'x 348 (6th Cir. 2012). Harrington's second and third trials resulted in hung juries, the fourth in a conviction. *Id.*

Clark filed several petitions for post-conviction relief, relying in part on evidence discovered after his trial. Of relevance here, both Wiseman and Stewart testified in Harrington's subsequent trials that their statements incriminating Clark and Harrington were lies. Wiseman testified that she lied because the Inkster police were harassing her and she wanted to get out of jail. When Stewart was asked why her story changed, she explained that she "was forced to tell a lie" by the Inkster police. "They told me if I don't tell them the truth that they was going to take me to jail and they was going to take my kids. And at the time I was on drugs. Now I want to come clean, I'm not on drugs no more and I don't know nothing about this murder." (R. 15-19, PageID 1827) The record contains a series of recanting affidavits from Stewart, ranging in execution date from May 2003, just a few months after the trial, to March 2013.

Clark also produced a transcript of an early police interview with Stewart. In it, Detective Abdallah stated,

> The faster you talk to us the faster I get your ass home to your kids. Do you realize you would have been out of here a couple of hours ago? Because the longer your kids are away from you, the faster—I mean if you're going to stay here we're going to call Social Services and have your kids picked up because you're going to be locked up, okay.

(*Id.*, PageID 1558–59) After this comment, Stewart volunteered for the first time that she saw Clark at Martin's house on the evening of the murder.

**B. The Instant Petition**

In September 2015, Clark filed a pro se motion to file a second or successive habeas petition. *See* § 2244 Motion, *In re Clark*, No. 15-2156 (6th Cir. Sept. 28, 2015) (D.E. 1). He attached an affidavit signed by Kaneka Jackson on August 10, 2015. The State did not respond to the petition. *See* Letter, *In re Clark*, No. 15-2156 (6th Cir. Oct. 26, 2015) (D.E. 4).

In her affidavit, Jackson stated that she was taking out the trash the evening of the murder when she saw Martin and a six-foot-one-inch, dark-skinned black man walk past her apartment complex. The tall man was behind Martin, holding a silver handgun to his back. She did not recognize the man with the gun, but she saw his face and knew he was not Clark. As Jackson returned to her apartment, she heard three gunshots and then saw the man run past her without Martin. After the body was recovered the next day, Jackson told her father, "an Inkster detective," what she had seen. (Martin's murder was investigated by the Inkster Police Department.) Her father told her "to keep [her] mouth closed . . . because he would take care of the situation and he did not want [her] placing [her] life in danger." (R. 1, PageID 38) She explained that Clark "never knew of [her] existence as a witness" and that she came forward because, "prior to [her] father's passing, [she] knew that nothing had been done to identify the actual killer of Mich[ae]l Martin." (*Id.*, PageID 39)

A panel of our court held that the allegations in Jackson's affidavit made a prima facie showing of satisfying AEDPA's standards for successive habeas petitions because they "supplie[d] 'sufficient allegations' together with 'some documentation' to warrant a fuller exploration in the district court." *In re Clark*, No. 15-2156, 2016 WL 11270015, at *3 (6th Cir. Mar. 28, 2016) (order) (quoting *In re McDonald*, 514 F.3d 539, 544 (6th Cir. 2008)). If Jackson's allegations were proven, the affidavit suggested that the police and prosecutor withheld information "in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)." *Id.* We therefore authorized the filing of a successive habeas petition. *See id.* Clark returned to the district court, filed a pro se petition, and moved to stay the proceedings while he exhausted the *Brady* claim.

Clark then filed a state court motion for relief from judgment pursuant to Michigan Court Rule 6.502(G)(2), arguing that Jackson's father "withheld exculpatory evidence in violation of

*Brady v. Maryland.*" The state court denied that motion for failure to satisfy Michigan's requirements for successive motions for relief. The court did not mention the *Brady* claim. The state intermediate court dismissed the petition to appeal without opinion.

Clark returned to the district court and, still proceeding pro se, filed an amended § 2254 petition. After receiving the Government's response and Clark's reply (but without holding an evidentiary hearing), the district court issued an order conditionally granting the petition. The district court explained that Jackson's allegations constituted favorable evidence withheld by the State that, "[a]t the very least," undermined confidence in the outcome of the trial. *Clark*, 2018 WL 3239619, at *7. The court deemed an evidentiary hearing unnecessary because the State failed to offer "any substantial facts to rebut the factual allegations raised," and ordered the State to release Clark or hold a new trial. *Id.* at *8. The State appeals.

## II. ANALYSIS

On appeal, the State makes two central arguments: (1) Clark's *Brady* claim could not be decided without an evidentiary hearing, and (2) Clark cannot satisfy AEDPA's requirements to grant a second or successive habeas petition.

As a preliminary matter, we note that after the notice of appeal was filed, the district court held a hearing related to Clark's motion to be released on bond pending appeal. In their briefs, the parties do not reference that hearing or make any arguments premised on testimony elicited there. This approach reflects the normal rule that the appellate record consists only of the evidence before the district court at the time of its ruling. *See* Fed. R. App. P. 10(a); *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 676 (6th Cir. 2013) (explaining that Rule 10's procedures for modifying the appellate record may not "be used to add new evidence that substantially alters the record after notice of appeal has been filed" (quoting *United States v. Barrow*, 118 F.3d 482, 487–88 (6th Cir. 1997))). Neither party has explained why Rule 10's strictures should be relaxed in this case. *See* Oral Arg. at 13:46–14:37, 30:15–30:24, *Clark v. Nagy*, No. 18-1885 (6th Cir. May 10, 2019). Moreover, both sides have forfeited any potential arguments premised on the bond hearing. We therefore do not consider that testimony in the present analysis.

## A.  Statutory Context

AEDPA provides that a second or successive habeas application filed by a state prisoner pursuant to § 2254:

> shall be dismissed unless—
>
> > (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> >
> > (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).  Before a successive petition may be filed in the district court, an appellate court must determine whether the applicant "makes a prima facie showing" of satisfying these requirements.  *Id.* § 2244(b)(3)(C).  Though the State finds fault with our prior determination that Clark made such a prima facie showing, it rightly concedes that "this Court's decision to allow Clark to file his successive petition is final."

After an appellate court authorizes filing, § 2244(b)(4) empowers the district court to dismiss any claim that does not "satisf[y] the requirements of this section."  *See also McDonald*, 514 F.3d at 543 (explaining the distinction between "this section" in § 2244(b)(4) and "this subsection" in § 2244(b)(3)(C)).  At that time, the district court may also determine that "an evidentiary hearing is warranted," or (more rarely) grant the petition without a hearing.  *See* Rule 8(a), Rules Governing § 2254 Cases; *id.*, Advisory Committee Notes (1976 Adoption) ("If no hearing is required, most petitions are dismissed, but in unusual cases the court may grant the relief sought without a hearing."); *see also Sawyer v. Hofbauer*, 299 F.3d 605, 612–13 (6th Cir. 2002) (directing the court to grant the writ on remand after explaining why an evidentiary hearing was unnecessary).  In the present case, the district court granted the petition without a

hearing; the State argues the court should have either dismissed the petition pursuant to § 2244(b)(4) or held an evidentiary hearing under Rule 8(a).**2**

### B. The *Brady* Violation

Our analysis begins with the question of "constitutional error." 28 U.S.C. § 2244(b)(2)(B)(ii). Clark alleges that the State violated his constitutional right to due process of law by suppressing Jackson's eyewitness identification in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The standard of review applicable to a § 2254 petition depends on the procedural history of the case. If the claim was adjudicated on the merits in state court, we ask whether that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). If, however, the state court did not reach the merits of the claim, "the claim is reviewed *de novo.*" *Cone v. Bell*, 556 U.S. 449, 472 (2009). Though Clark squarely presented his *Brady* claim to the Michigan courts, the only reasoned decision issued turned on a state procedural rule, not the merits of that claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). We therefore review Clark's *Brady* claim de novo.**3**

---

**2**In certain habeas cases, another AEDPA subsection instructs that a district court "shall not hold an evidentiary hearing" unless a petitioner meets a very similar standard to that laid out in § 2244(b)(2). *See* 28 U.S.C. § 2254(e)(2). This heightened standard, however, applies only if the petitioner "failed to develop the factual basis of a claim in State court proceedings." *Id.* A petitioner has not "failed" to develop the record in the manner contemplated by this subsection "where he was unable to develop his claim in state court despite diligent effort." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Rather, the applicant must make "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court." *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2011) (quoting *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004)). Because the State does not dispute that Clark exercised the requisite diligence, this standard is inapplicable to the present case.

**3**The state court's denial of this claim for failure to comply with a Michigan procedural rule might appear to raise the specter of procedural default. *See Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (explaining that a claim may be procedurally defaulted if "the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule"). But, as the State properly conceded below,

A *Brady* claim has three elements:  "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued."  *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

As to the first element, Clark's *Brady* claim hinges on Jackson's undisclosed eyewitness account identifying a different murderer.  "[A] positive identification of different suspects by an eyewitness to the crime" is undoubtedly the sort of favorable evidence contemplated by *Brady*. *Jamison v. Collins*, 291 F.3d 380, 389 (6th Cir. 2002).  The State concedes as much but adds a caveat: "if the Jackson affidavit is true."  But this first element asks only which party the evidence favors.  The State does not cite any cases limiting the "favorable" category to evidence that is ultimately deemed credible.  To the contrary, "[w]ithholding knowledge of a second suspect conflicts with the Supreme Court's directive that 'the criminal trial, as distinct from the prosecutor's private deliberations, [be preserved] as the chosen forum for ascertaining the truth about criminal accusations.'"  *Gumm v. Mitchell*, 775 F.3d 345, 364 (6th Cir. 2014) (second alteration in original) (quoting *United States v. Jernigan*, 492 F.3d 1050, 1056–57 (9th Cir. 2007) (en banc)).  An eyewitness statement exculpating Clark favors him, even if the State or the factfinder does not believe it.

The prejudice analysis is similarly straightforward.  *Brady* prejudice asks whether, if the suppressed evidence had been disclosed, there would have been a "reasonable probability of a different result."  *Banks*, 540 U.S. at 699 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  As the Supreme Court has emphasized,

> the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

---

"a petitioner who proves a *Brady* violation demonstrates cause and prejudice to excuse procedural default of the *Brady* claim."  *Brooks v. Tennessee*, 626 F.3d 878, 891 (6th Cir. 2010).

*Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Jackson's eyewitness identification of a suspect other than Clark squarely contradicts the one piece of evidence linking Clark to this crime: Stewart's testimony. "Considerable authority from the Supreme Court and our court indicates that a defendant suffers [*Brady*] prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009) (collecting cases). The same is necessarily true when the withheld evidence is an eyewitness identification directly contradicting the State's lone witness. That conclusion is only strengthened where, as here, the State's witness subsequently recanted. *See McDonald*, 514 F.3d at 547 ("[G]iven the lack of direct evidence linking McDonald to the underlying crimes, Harris's recanting of her trial testimony looms large.").

But the analysis of the second element, suppression, is more complex. In many *Brady* cases, suppression is not contested at all—often because police or prosecutors later produced the exculpatory information. *See, e.g.*, *Gumm*, 775 F.3d at 361 (exculpatory information included the officers' tip sheets and investigation notes); *Sawyer*, 299 F.3d at 609 (exculpatory information obtained in a Freedom of Information Act request). But on these unusual facts, the only evidence that the police knew about Jackson's identification is her statement that she told her father, "an Inkster detective," about "the chain of events that [she] witnessed." If Jackson did not tell her father what she saw, then the State could not have suppressed her evidence. Jackson's credibility is therefore critically important as to this second element. The commonly accepted method to determine whether a witness is telling the truth is to hold an evidentiary hearing. *See Pola v. United States*, 778 F.3d 525, 535 (6th Cir. 2015) (remanding for an evidentiary hearing because, "[a]lthough district courts are usually in the best position to determine whether witnesses are credible, when the decision to conduct a § 2255 evidentiary hearing turns on credibility issues, then resolution on the basis of affidavits can rarely be conclusive" (citation, ellipsis, and internal quotation marks omitted)).

Clark argues that an evidentiary hearing is unnecessary for two reasons. First, he submits that the State waived an evidentiary hearing by arguing below that the district court should deny Clark's hearing request without a hearing. But the State argued in the alternative that "an

evidentiary hearing where Ms. Jackson will be subject to cross-examination would be an option." The State did not waive (or forfeit) its fallback position by emphasizing its most desired outcome. *Cf. Timbs v. Indiana*, 139 S. Ct. 682, 690 (2019) (considering the merits of a "fallback" argument).

Second, Clark argues that his is the sort of unusual case that does not require a hearing. Habeas relief may sometimes be granted without an evidentiary hearing. *See* Rule 8(a), Rules Governing § 2254 Cases, Advisory Committee Notes (1976 Adoption). We have approved that approach if the violation is "clearly established by the record" such that "an evidentiary hearing would only confirm" the allegations. *Sawyer*, 299 F.3d at 612. Skipping a hearing might also be appropriate in other unusual circumstances, such as when a critical affiant is deceased, *see Young v. Gipson*, 163 F. Supp. 3d 647, 749–50 (N.D. Cal. 2015), an attorney's ineffectiveness is patent in the record, *see Bemore v. Chappell*, 788 F.3d 1151, 1176 (9th Cir. 2015), or the Government concedes error, *see United States v. Vaughn*, No. 04-80983, 2018 WL 352893, at *1 (E.D. Mich. Jan. 10, 2018).

In the present case, the State has known of Jackson's affidavit since 2015, when Clark moved to file his successive petition. If the State believed that the signatures on the affidavit were not genuine—a possibility the State raised in its initial brief and withdrew on reply—it had three years in which to produce an affidavit from the real Kaneka Jackson or the notary public. It did not do so. It likewise had three years to uncover evidence that Clark influenced Jackson's testimony or that Jackson was not a reliable affiant. The State's failure to produce evidence calling Jackson's affidavit into question counsels against holding an evidentiary hearing. On the other hand, Clark's case does not present the sort of unusual circumstances—such as a deceased affiant or a defect obvious from the record—that justified granting relief without a hearing in other cases. *See Bemore*, 788 F.3d at 1176; *Young*, 163 F. Supp. 3d at 749–50. Nor can it be confidently declared that a hearing "would only confirm" Jackson's version of events. *Sawyer*, 299 F.3d at 612. Certain credibility questions are apparent in this affidavit. For example, why did Jackson wait years to come forward? Did she interact with Clark before executing this affidavit? An evidentiary hearing is the proper forum to answer these questions. *See Pola*,

778 F.3d at 535 (directing that credibility concerns raised by a "self-serving" affidavit be addressed in an evidentiary hearing).

A remand for an evidentiary hearing is therefore necessary to determine whether Clark's *Brady* claim can succeed.

## C. AEDPA Requirements

If this case were on direct appeal, our analysis would end here. But this is a successive habeas petition, subject to the strictures of AEDPA. Because Clark's claim relies on newly discovered evidence, and not a new rule of constitutional law, AEDPA requires that he make two showings to avoid dismissal: (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and (2) "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(i)–(ii). The State submits that Clark can never meet this burden, rendering remand for an evidentiary hearing unnecessary.

As a general matter, "[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (alteration in original) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).[4] This obligation is not triggered, however, if the allegations "are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). And in a petition governed by § 2254, a court should also "take into account [AEDPA's] standards in deciding whether an evidentiary hearing is appropriate." *Schriro*, 550 U.S. at 474.

A district court's decision *denying* a hearing is reviewed for abuse of discretion. *See id.* at 468; *Huff*, 734 F.3d at 607. The few cases reviewing a district court's decision to *hold* a

---

[4]This general rule is limited by 28 U.S.C. § 2254(e)(2) if a petitioner "failed to develop the factual basis of a claim in State court proceedings." As explained above, *see supra* n.2, Clark reasonably attempted to present his claim before the state court and so is not subject to § 2254(e)(2)'s limitations. *See Williams*, 529 U.S. at 437; *Robinson*, 663 F.3d at 824.

hearing suggest our review is at least as deferential, if not more so.  For example, in *Sowell v. Bradshaw*, even though we reversed the district court's grant of habeas relief, we rejected the challenge to the hearing itself, reasoning that the district court "has inherent authority to hold an evidentiary hearing even if [the] petitioner is not entitled to one."  372 F.3d 821, 830 (6th Cir. 2004).  The State, however, asks us to declare a hearing unnecessary as a matter of law—in effect, to claw back a determination committed to a district court's sound discretion.  But AEDPA carefully apportions responsibilities between trial and appellate courts, and we are aware of no cases taking such an unusual step.  We therefore ask only whether the district court would abuse its discretion by holding an evidentiary hearing on remand.

1. Due Diligence

AEDPA first requires Clark to exercise "due diligence."  28 U.S.C. § 2244(b)(2)(B)(i). "To show due diligence, the petitioner need not have practiced the maximum feasible diligence." *In re Wogenstahl*, 902 F.3d 621, 629 (6th Cir. 2018) (order) (brackets, citation, and internal quotation marks omitted).  Rather, he must show that "he has done as much as could reasonably be expected from someone in his circumstances."  *Id.* (citation and internal quotation marks omitted).

Clark's motion to file a successive petition was filed within six weeks of the execution of Jackson's affidavit in August 2015.  The State does not argue that a six-week gap runs afoul of the due-diligence requirement.  *Cf.* 28 U.S.C. § 2244(d)(1)(D) (providing for a one-year limitations period that runs from the date when the relevant facts could have been discovered). And according to the affidavit, Clark had no way to discover the information the affidavit contained prior to its execution:  "The herein Defendant George Clark never knew of my existence as a witness because I never came forward except by informing my father . . . ." A factfinder's reasonable questions about this statement might be grounds for holding an evidentiary hearing to test Jackson's credibility, but those doubts are not a basis for refusing to hold a hearing as a matter of law.  *See Pola*, 778 F.3d at 535.  Because the State has not identified evidence in "the record [that] refutes [Jackson's] factual allegations," *Schriro*, 550 U.S. at 474, the district court would not abuse its discretion by holding an evidentiary hearing to inquire into Clark's diligence.

2.  Evidentiary Burden

The next question is whether Jackson's identification, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii).

We begin by summarizing "the evidence as a whole." *Id.* Because no physical evidence linked Clark to the crime, the State's case hinged on Stewart's statements from the preliminary hearings. The reliability of those statements came into question at trial: Stewart refused to verify her prior statements; inconsistencies in those statements were highlighted; the medical examiner testified that there were no marks on Martin's body consistent with his being beaten or dragged as Stewart described; and Detective Abdallah testified that he told Stewart "if you're gonna interfere with this homicide investigation, we'll lock you up, and I will have to call Social Services and have 'em pick up your kids 'cause I'm not gonna babysit 'em." (R. 15-6, PageID 803) Stewart's description, however, garnered some support from Wiseman's testimony that Clark told her to lie and say that she and Stewart were together the night of the murder.

During subsequent trials of Clark's co-defendant, Harrington, both Wiseman and Stewart testified that their incriminating statements were lies told due to pressure from the Inkster police.[5] When asked on the stand why she lied, Stewart responded:

> Because I told [the police] I didn't know nothing about the murder. They kept on asking me questions and kept on, kept on, kept on. I told them I didn't know nothin' about the murder. So they kept on cussing me out and telling me to tell them the truth. I told them I don't know nothing about this murder. I told them that I had kids. I don't know nothin'. They told me if I don't tell them the truth that they was going to take me to jail and they was going to take my kids. And at

---

[5]The district court relied in part on these recantations even though they were neither part of the trial record nor the root of the claimed constitutional violation. *See Clark*, 2018 WL 3239619, at *6–7. This understanding of "the evidence as a whole" comports with the Fourth Circuit's holding in *United States v. MacDonald* that "the 'evidence as a whole' is exactly that: all the evidence put before the court at the time of its § 2244(b)(2)(B)(ii)or § 2255(h)(1) evaluation." 641 F.3d 596, 610 (4th Cir. 2011). Our published precedent agrees that recantations may be considered in the § 2244(b)(2)(B)(ii) calculus even when those recantations do not themselves give rise to the constitutional claim. *See McDonald*, 514 F.3d at 547. The State does not challenge the district court's reliance on this evidence.

the time I was on drugs. Now I want to come clean, I'm not on drugs no more and I don't know nothing about this murder.

(R. 15-19, PageID 1826–27) Clark has also produced a series of recanting affidavits from Stewart, executed over a ten-year period between 2003 and 2013. The State responds that a reasonable juror could believe these recantations were motivated by Clark and Harrington's death threats the night of the murder, pointing out that Harrington was ultimately convicted despite the recantations—albeit in his fourth trial. *See Clark*, 2010 WL 3430782, at *8–9 & n.4; Oral Arg. at 1:50–2:11, *Clark v. Nagy*, No. 18-1885 (6th Cir. May 10, 2019).

Against this body of evidence, Clark presents Jackson's new eyewitness account. In her affidavit, Jackson states that, the night of the murder, she saw a tall, dark-skinned black man walking the victim toward the woods, pressing a handgun to his back, just before she heard gunshots. Though she did not recognize the tall man, she knew he was not Clark. Jackson's description of events, if true, exonerates Clark.

AEDPA asks whether Jackson's identification, "if proven and viewed in light of the evidence as a whole," 28 U.S.C. § 2244(b)(2)(B)(ii), would have changed the outcome of the trial. Applying this standard in *Keith v. Bobby*, we explained that even if new evidence bearing on the credibility of secondary witnesses were proven, it could not meet this standard in light of "the balance of evidence left uncontroverted by" the new allegations—there, "the eyewitness placing [the petitioner] at the scene; the partial match of the license plate; and the matching gun casings." 551 F.3d 555, 559 (6th Cir. 2009) (order). In this case, Jackson's alternate identification controverts the lynchpin of the State's case against Clark: Stewart's now-recanted eyewitness testimony. If proven, "the balance of evidence left uncontroverted by" Jackson's identification, *id.*, would consist only of Wiseman's now-recanted statement about Clark's attempt to influence her testimony. The State wisely does not argue that Clark could be convicted of first-degree murder on that testimony alone.

The question that remains is whether there is a "clear and convincing" reason to believe Jackson's identification over Stewart's—a reason that "no reasonable factfinder would" overlook. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). At this stage, we simply cannot say. Jackson's allegations are not inherently unbelievable or disproven by the record. *See Huff*, 734 F.3d at 607.

On the other hand, we have no basis to conclude that "an evidentiary hearing would only confirm" Jackson's story. *Sawyer*, 299 F.3d at 612. It is therefore well within the district court's discretion to hold an evidentiary hearing and seek that answer.

The State disagrees, arguing that we should find "persuasive" the state court's analysis rejecting Clark's petition under Michigan's standards for successive motions. AEDPA requires us to defer to a state court's resolution of "any claim that was adjudicated on the merits in State court proceedings" and to presume correct a state court's "determination of a factual issue." 28 U.S.C. § 2254(d), (e)(1). The first type of deference is not implicated here, as Clark's *Brady* claim was not adjudicated on the merits. The second presumption "applies to basic, primary or historical facts and implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility. The presumption does not apply to mixed questions of law and fact, or questions of law, both of which are reviewed *de novo*." *Powell v. Collins*, 332 F.3d 376, 389 (6th Cir. 2003) (citation and internal quotation marks omitted).

The state court held no hearings and made no factual findings. Instead, it resolved a mixed question of law and fact: whether these circumstances satisfied a Michigan legal standard. *See Townsend v. Sain*, 372 U.S. 293, 309 n.6 (1963) ("By 'issues of fact' we mean to refer to what are termed basic, primary, or historical facts . . . . So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense."). In performing our de novo review, we do not defer to a state court's application of a Michigan legal standard. And even if the state court decision were considered, it would provide little assistance, as Michigan's standard contains no "if proven" language comparable to AEDPA's, *see People v. Cress*, 664 N.W.2d 174, 182 (Mich. 2003), and the state court did not limit its consideration to the evidence "left uncontroverted" by the new allegations, as we do, *see Keith*, 551 F.3d at 559.

The State also argues that because it is "possible" that "at least one juror would reject Jackson's testimony as not credible," AEDPA's demanding standard cannot be met. This argument sits uneasily with § 2244(b)(2)(B)(ii)'s text, which asks us to analyze what would occur at trial "if [the new evidence were] proven." But more fundamentally, the State asks us to resolve a factual, credibility-based dispute before the record necessary to do so has been

developed. We will not bypass what even the State admits is the standard process for establishing credibility: holding an evidentiary hearing. *See* Oral Arg. at 31:47–31:54, *Clark v. Nagy*, No. 18-1885 (6th Cir. May 10, 2019) ("[T]hat's what the district court generally does in these cases where there's an affidavit that the district court thinks might be credible is that they order a hearing, they order discovery."). AEDPA asks us to predict the response of a reasonable juror. We cannot delineate the universe of reasonable responses to testimony that has not been aired and evaluated at a full evidentiary hearing.

For all these reasons, the district court would not abuse its discretion by holding an evidentiary hearing to inquire into whether Jackson's testimony is credible enough to carry Clark's burden under AEDPA.

**D. Motion to Remand**

At the beginning of appellate proceedings, the State filed a motion to remand the case for further consideration in light of newly discovered evidence. For the reasons explained above, remand for further proceedings is necessary to resolve Clark's claim. Because the State will have the opportunity to present any new evidence upon remand, this motion is denied as moot.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's decision granting habeas relief and **REMAND** the case for further proceedings consistent with this opinion. The State's motion to remand is **DENIED** as moot.