RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0314p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MICHON D. HOUSTON,

    *Petitioner-Appellant,*

  *v.*

JEFF TANNER, Warden,

    *Respondent-Appellee.*

No. 24-1963

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-10861—Sean F. Cox, District Judge.

Argued:  October 21, 2025

Decided and Filed:  November 21, 2025

Before:  SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Kyle M. Kantarek, K&L GATES LLP, Chicago, Illinois, for Appellant.  Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON BRIEF:**  Kyle M. Kantarek, David R. Fine, K&L GATES LLP, Chicago, Illinois, for Appellant.  Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

LARSEN, Circuit Judge.  A Michigan jury convicted Michon Houston of first-degree murder, possession of a firearm by a felon, and felony firearm.  Claiming to possess new evidence showing ineffective assistance of counsel, Houston petitions for habeas relief—for the second time.  The district court dismissed the petition for failing to satisfy the gate-keeping

requirements of 28 U.S.C. § 2244(b)(2)(B) and for untimeliness. Because Houston satisfies neither the gate-keeping nor equitable-tolling requirements, we AFFIRM.

I.

In the early morning of September 6, 2002, Carlton Thomas was shot in a high drug trafficking area in Detroit. Police found Carlton[1] alone, in a vacant lot on Buena Vista Street. He died later that day without identifying his shooter.

The medical examiner discovered four gunshot wounds: front left knee, front left side, left side, and right cheek. Each wound had an exit point, so the examiner found no bullets or bullet fragments. Police recovered Carlton's clothes and belongings; he carried no money on him.

Police canvassed the scene for evidence. They observed blood near a tree and a bike in the street, but they found no bullets or casings. When they interviewed people in the neighborhood, no one could identify the shooter. They interviewed two local drug dealers—Lavero Crooks and Jovan Johnson—multiple times. Each time, Crooks and Johnson denied knowing about the shooting.

Two months later, Crooks reported to the police that Michon Houston—another local drug dealer—had threatened him with a gun. Crooks then helped the police locate and arrest Houston. After this, Crooks told the police that he had seen Houston shoot Carlton back in September.

Around the same time, police arrested Johnson on drug charges. Police again asked about the September shooting, and, this time, Johnson identified Houston as the shooter. Houston was then charged with Carlton's murder.

Both Crooks and Johnson testified—with somewhat varying accounts—at Houston's trial. The remaining witnesses consisted of the police officers who investigated the shooting and the medical examiner. No physical evidence was presented.

---

[1]Because there are two individuals with the last name "Thomas," we refer to Carlton Thomas as "Carlton" and Nicole Thomas as "Nicole."

Crooks testified that he and a woman were sitting in his car on Buena Vista, selling drugs, when the shooting occurred. The car was parked near a vacant lot, and Crooks saw Houston, Johnson, and Houston's girlfriend sitting on a porch across from the lot. When a man walked into the lot, Houston approached him, and an argument broke out. Houston said, "[Y]ou ain't gonna deal with me, this is my block." He then went into the house, returned with a gun, and fired one shot. The victim fell to the ground near a tree. Running onto the lot, Houston said, "Dude, I shot that n\*\*\*a in his face the first time." Houston then rolled the victim onto his back, searched his pockets, and fired more shots.

Johnson also testified that he, Houston, and Houston's girlfriend were sitting on the porch of the Buena Vista residence. When they saw a man enter the vacant lot, they yelled out to him. Houston then approached the man. After a disagreement, Houston chased the man around a tree and fired two or three rounds. The man fell onto his back; Houston stood over him and shot him two or three more times. Houston then returned to the porch and ordered Johnson to verify that the victim was dead. Johnson did so. He found the victim alive but told Houston that he was dead. Unlike Crooks, Johnson did not hear Houston use any racial slurs and did not see Houston return to the house to grab a gun, roll the victim onto his back, or go through the victim's pockets. Johnson also did not see Crooks or his car on Buena Vista.

Defense counsel cross-examined these witnesses but did not call any witnesses of his own. The jury convicted Houston of first-degree murder, possession of a firearm by a felon, and possession of a firearm in the commission of a felony.

Houston appealed his conviction and pursued state post-conviction relief. After the state courts denied relief, Houston filed a federal habeas petition. *See Houston v. Ludwick*, 2011 WL 1135465 (E.D. Mich. Mar. 25, 2011). This too was denied. *See id.*

In June 2016, Houston moved again for relief from judgment in state court. He alleged ineffective assistance of counsel based on his lawyer's failure to investigate potential witnesses, and he claimed to have new evidence that proved his innocence: an affidavit from Tony Miller. As alleged in the motion, Houston had asked his trial counsel to speak with certain Buena Vista residents, including Nicole Thomas, regarding the shooting. Counsel refused to do so. Houston

argued that had counsel investigated, Nicole would have led counsel to Miller, who then could have proved Houston's innocence.

In the attached affidavit, Miller claimed to have been outside Nicole's home during the shooting and to have seen Crooks murder Carlton. According to the affidavit, at around 4:00 or 4:30 a.m. on September 6, 2002, Miller drove to the Buena Vista neighborhood to pick up Nicole. While he waited in his car for her, he saw Crooks and a woman sitting in Crooks's car. Two men—one with a bicycle—approached the car and engaged Crooks in conversation. During the exchange, the man with the bike ran off. Crooks then chased the remaining man into the vacant lot on Buena Vista and shot him several times. Miller left after this, without Nicole. And he never told her what he witnessed. Miller signed his affidavit in 2014, four years after he met Houston in prison—and twelve years after the crime occurred.

The state trial court criticized Miller's affidavit as "a specious attempt by the defendant and the affiant to circumvent the law in order to provide the defendant with 'another bite at the apple.'" R. 9-10, Opinion, PageID 873–74. The court denied the motion, concluding that the new evidence was insufficient to overcome Michigan's procedural bar on successive motions. The state appellate courts denied further review.

After exhausting state court remedies, Houston filed a second petition for a writ of habeas corpus in federal court, seeking authorization under 28 U.S.C. § 2244(b)(2)(B). The court stayed the case to allow the Wayne County Prosecutor's Conviction Integrity Unit to investigate Houston's innocence claim. After investigating the claim, the unit determined not to recommend any relief. This court then authorized Houston to file this successive petition for his ineffective-assistance-of-counsel claim. *In re Houston*, No. 18-1579 (6th Cir. Nov. 17, 2020) (order). To support his petition, Houston submitted affidavits from four individuals: Miller, Johnson, Jermaine Jones, and Houston himself.

Miller's affidavit is the same as the one filed in state court. Johnson's affidavit, signed in 2013, recants his trial testimony and alleges that Crooks threatened to kill him if he didn't testify against Houston. Jones's affidavit, signed in 2021 while Jones was incarcerated, states that Jones knew Crooks to be violent and that people in the neighborhood were saying Crooks

murdered Carlton.  Houston's affidavits recount how Houston had asked counsel to interview Nicole, but counsel refused to do so.  Further, Houston says he met Miller in prison and, upon meeting him, learned about Miller's connection to Nicole and his knowledge of the shooting.

The district court deemed these affidavits unreliable and dismissed the petition, concluding that Houston had failed to satisfy either prong of § 2244(b)(2)(B), and that his petition was untimely and failed to satisfy the requirements for equitable tolling.  In the alternative, the district court also denied relief on the merits.  Houston timely appealed.

## II.

Reviewing the dismissal de novo and the district court's factual findings for clear error, we agree with the district court that Houston failed to satisfy the requirements for either § 2244(b)(2)(B) or equitable tolling.  *See Hubbard v. Rewerts*, 98 F.4th 736, 742 (6th Cir. 2024), *cert. denied sub nom. Hubbard v. Tanner*, 145 S. Ct. 1201 (2025) (providing the standard of review).  Because each of these conclusions independently compels dismissal of the petition, we need not consider the district court's merits determination.

## A.

The Antiterrorism and Effective Death Penalty Act (AEDPA) limits our review of state criminal convictions.  *See* 28 U.S.C. § 2254; *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Relevant here, AEDPA requires that we dismiss a successive § 2254 petition "unless it falls within one of two narrow exceptions." *Tyler v. Cain*, 533 U.S. 656, 661 (2001); § 2244(b)(2).  One exception—an actual-innocence exception—permits us to review a claim in a successive petition when the petitioner presents new facts that satisfy a two-pronged test:

(i)     the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii)    the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B); *see Ross v. Berghuis*, 417 F.3d 552, 557 n.4 (6th Cir. 2005).

This is "a very demanding test." *Foster v. Chatman*, 578 U.S. 488, 520 (2016) (Alito, J., concurring). It shares much in common with the actual innocence exceptions announced in *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013), which created narrow pathways for federal review of procedurally defaulted and time-barred claims, respectively. The primary distinction is that § 2244(b)(2)(B) adopts an even "more stringent actual innocence exception" than those announced in *Schlup* and *McQuiggin*. *Souter v. Jones*, 395 F.3d 577, 590 n.5 (6th Cir. 2005). So, like the *Schlup* and *McQuiggin* exceptions, § 2244(b)(2)(B)'s actual innocence exception is to remain "rare" and be applied only in "the extraordinary case." *Schlup*, 513 U.S. at 321.

The district court determined that this was not the rare or extraordinary case, finding that Houston failed to satisfy either prong of § 2244(b)(2)(B). We need not decide whether Houston satisfied the first prong because we agree that he did not satisfy the second.

1.

Section 2244(b)(2)(B)(ii) asks whether, "but for constitutional error," the "facts underlying the claim" would be "sufficient to establish by clear and convincing evidence" that no reasonable juror would have convicted the petitioner. § 2244(b)(2)(B)(ii); *see Calderon v. Thompson*, 523 U.S. 538, 558 (1998). The district court, relying on the Tenth Circuit's decision in *Case v. Hatch*, concluded that the petitioner's new facts must be connected to the constitutional claim; it thus disregarded Johnson's and Jones's affidavits. 731 F.3d 1015, 1032 (10th Cir. 2013) ("[A]n applicant is required to tie his newly proffered facts to the claimed constitutional violation."). Neither Houston nor the State contests this reading of the statute.

We note, however, that some language in *Clark v. Warden*, 934 F.3d 483 (6th Cir. 2019), is in tension with the rule applied by the district court. In a footnote, *Clark* noted that the district court there had relied on witness recantations that were "neither part of the trial record nor the root of the constitutional violation." *Id.* at 496 n.5. *Clark* seemed to approve, citing the Fourth Circuit's decision in *United States v. MacDonald*, 641 F.3d 596, 610 (4th Cir. 2011), and our similarly named decision, *In re McDonald*, 514 F.3d 539, 547 (6th Cir. 2008). Yet, *Clark* acknowledged that neither party "challenge[d] the district court's reliance on this evidence," *id.*,

and *Clark*'s statement had no bearing on its resolution of the case, *see id.* So, *Clark*'s comments on this point do not bind us. *See Wright v. Spaulding*, 939 F.3d 695, 700–02 (6th Cir. 2019) ("[A] conclusion that does nothing to determine the outcome is dictum and has no binding force." (emphasis omitted)). Nor can we find in our *McDonald* opinion any support for the claimed proposition "that recantations may be considered in the § 2244(b)(2)(B)(ii) calculus even when those recantations do not themselves give rise to the constitutional claim." *Clark*, 934 F.3d at 496 n.5. In fact, the court in *McDonald* determined that the recanting affidavit, if believed, would establish all three elements of the underlying *Brady* claim. *McDonald*, 514 F.3d at 545–46.

Meanwhile, the Fourth Circuit's decision in *MacDonald* concerned a federal prisoner, subject to the gateway provisions of 28 U.S.C. § 2255(h)(1), rather than the state-prisoner gateway contained in § 2244(b)(2)(B)(ii). 641 F.3d at 609. *MacDonald* did suggest, in dictum, that the reference to the "evidence as a whole" in *both* gateway provisions meant that petitioners could pass through the respective gateways by supplementing the existing record with new evidence *unrelated to* the underlying constitutional claim. *See id.* at 614; *id.* at 610 (suggesting an equivalency between the inquiries under § 2255(h)(1) and § 2244(b)(2)(B)(ii)). But, citing the Tenth Circuit's decision in *Case*—the same opinion relied upon by the district court here— later Fourth Circuit caselaw seems to have cast doubt on this conclusion, noting "that § 2255(h)(1) contains crucial linguistic differences that render it more lenient than § 2244(b)(2)(B)(ii)." *In re Graham*, 61 F.4th 433, 440 n.3 (4th Cir. 2023) (citation omitted).

At the end of the day, our circuit has yet to determine what new facts a petitioner may present for our consideration under § 2244(b)(2)(B)(ii). And the parties have not briefed the issue. So, we will accept, for present purposes, the parties' understanding of the legal rule: the petitioner's new evidence must be "rooted in constitutional error[] occurring during trial." *Case*, 731 F.3d at 1038.

Applying *Case*'s rule, Houston argues that we should consider Johnson's and Jones's affidavits because they are connected to his constitutional claim. We disagree.

Only Miller's affidavit is "rooted in" Houston's constitutional claim. *See id.* It is undisputed that Houston's sole constitutional claim is ineffective assistance of counsel—based on his attorney's alleged refusal to investigate Nicole. To connect Miller's affidavit to constitutional error, we must make some assumptions. The theory goes that had counsel spoken with Nicole, Nicole would have told him that Miller was waiting outside her home when the shooting occurred; then counsel would have spoken with Miller; Miller would have told counsel that he saw Crooks murder Carlton; and Miller would have testified accordingly. Thus, counsel performed deficiently by refusing to investigate Nicole, and this prejudiced Houston's defense because it deprived him of an exculpatory witness at trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accepting these assumptions as reasonable, Miller's affidavit relates to *Strickland*'s prejudice prong. Thus, Houston links this affidavit to his constitutional claim. *See Case*, 731 F.3d at 1034.

By contrast, Johnson's and Jones's affidavits are not rooted in Houston's constitutional claim. *See id.* To connect Johnson's affidavit to the constitutional claim, we would have to accept the assumptions relating to Miller's affidavit and then go further. In inviting us to do so, Houston asks us to enter the realm of pure conjecture. He asks us to speculate: (1) that, based on Miller's word alone, the police would have arrested Crooks and held him; (2) that, with Crooks in custody, Johnson would have felt it was safe to disregard Crooks's threat; (3) that Johnson would have withdrawn his identification of Houston; and (4) that Johnson still would have testified at trial, saying that he previously lied and that Crooks threatened him. This level of speculation fails to support an ineffective-assistance claim. *See Fautenberry v. Mitchell*, 515 F.3d 614, 634 (6th Cir. 2008). Thus, Johnson's affidavit and the claim lack the requisite linkage.

Jones's affidavit fares no better. Jones does not claim to have any firsthand knowledge of the shooting. Rather, he states that he knew Crooks "to be wild and violent" and that "[e]veryone in the area was saying that [Crooks] committed the murder." R. 1, Jones Affidavit, PageID 71. Houston again speculates and argues that had his counsel properly investigated, he too would have been "armed with [this] word on the street." Petitioner Br. at 24. But speculating that unidentified persons might have told counsel "the word on the street" fails to connect Jones's hearsay testimony with Houston's ineffective-assistance-of-counsel claim.

Thus, under *Case*'s reasoning, the district court properly disregarded these affidavits for not being "rooted in constitutional error at trial." *Case*, 731 F.3d at 1034.

2.

Houston next argues that the district court improperly analyzed Miller's affidavit and failed to consider it as "proven." § 2244(b)(2)(B)(ii). Relying on *Clark v. Warden*, Houston suggests that we must assume that every reasonable juror would accept Miller's testimony over Crooks's and Johnson's trial testimony. But that is not the test. We take as "proven" only the facts underlying his ineffective-assistance-of-counsel claim—not the ultimate facts. *See id.*; *see also Charboneau v. Davis*, 87 F.4th 443, 456 (9th Cir. 2023), *cert. denied*, 145 S. Ct. 179 (2024). Taking the ultimate facts as proven would contradict the provision's other mandates—to view the new facts "in light of the evidence as a whole" and to determine whether the new facts would suffice to establish innocence by "clear and convincing evidence." *See* § 2244(b)(2)(B)(ii); *Charboneau*, 87 F.4th at 456 ("[T]aking the ultimate facts as 'proven' would render the strictures of § 2244(b)(2)(B)(ii) a dead letter[.]"). Thus, we take as proven that had defense counsel investigated Nicole, counsel would have found Miller, and Miller would have testified at trial consistent with his affidavit. But we do not assume that every reasonable juror would believe Miller's testimony over the other witnesses at trial.

*Clark* is not to the contrary. In *Clark*, we acknowledged that a new affidavit, connected to the constitutional claim, contradicted another witness's testimony by providing an alternative identification of the perpetrator. *Clark*, 934 F.3d at 496. But we did not conclude that every juror would believe the new affidavit. Instead, we asked whether there was "a clear and convincing reason" to believe the new identification over the prior identification—"a reason that no reasonable factfinder would overlook." *Id.* (citation modified); *cf. House v. Bell*, 547 U.S. 518, 554 (2006) (analyzing, under a less stringent actual-innocence exception, whether, "had the jury heard all the conflicting testimony," no reasonable juror, "viewing the record as a whole," would have convicted the petitioner).

We could not answer that question in *Clark* on the record presented to us. *Clark*, 934 F.3d at 496–97. Because the new evidence was neither "inherently unbelievable" nor "disproven

by the record," we remanded so that the district court could assess the new affiant's credibility. *Id.* at 496–98.

Here, as in *Clark*, we acknowledge that Miller's identification conflicts with the identifications Crooks and Johnson made at trial. Miller claims he saw Crooks murder Carlton; Crooks and Johnson testified that they saw Houston murder Carlton. So, we must determine whether there is a "clear and convincing reason" to believe Miller over Crooks and Johnson—"a reason that no reasonable factfinder would overlook." *Id.* at 496 (citation modified). Unlike in *Clark*, the record before us allows us to make that determination, and to say "no."

A reasonable juror could discount Miller's affidavit as unreliable. *See Hubbard*, 98 F.4th at 742, 749. Miller signed his affidavit twelve years after the crime occurred, only after he met Houston in prison, and while serving a life sentence. The delay alone "casts a pall of unreliability over the testimony." *Id.* at 749. And Miller provides no explanation for the delay. *See McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (faulting witnesses for "not provid[ing] a good explanation for why they took so long to come forward with evidence that [the petitioner] stands wrongly accused of murder").

The sequence of events also renders Miller's statement suspect. Miller came forward only after he met Houston in prison. *See Hubbard*, 98 F.4th at 749; *cf. Herrera v. Collins*, 506 U.S. 390, 423, (1993) (O'Connor, J., concurring) ("It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him."). These types of "affidavits are to be treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring).

Considering all these facts, Houston fails to provide "a 'clear and convincing' reason" to believe Miller over Crooks and Johnson. *Clark*, 934 F.3d at 496 (quoting 28 U.S.C. § 2244(b)(2)(B)(ii)). In fact, a reasonable juror could discount Miller's affidavit, and relying on Crooks's and Johnson's testimony, still convict. Thus, Houston fails to satisfy the requirements of § 2244(b)(2)(B)(ii).

Regardless of the Miller affidavit's unreliability, Houston fails to clearly and convincingly show that, had Miller testified, no reasonable juror would convict Houston. *See* 28 U.S.C. § 2244(b)(2)(B)(ii). Both Crooks and Johnson testified that they saw Houston shoot

Carlton. At trial, defense counsel pointed out inconsistencies between Crooks's and Johnson's testimony, accused them of lying, and suggested that they should be suspects. Defense counsel ultimately deemed Crooks a liar and Johnson the true murderer. The jury rejected this theory, convicting Houston.

Now, with Miller's affidavit, Houston proposes an alternative: both Crooks and Johnson lied, and Crooks murdered Carlton. But Houston fails to show that every reasonable juror would accept this theory. *See* § 2244(b)(2)(B)(ii). Generally, a reasonable juror may freely choose between conflicting testimony so long as the chosen testimony is neither implausible nor patently incredible. *United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005). Houston fails to prove Crooks's and Johnson's testimony implausible or patently incredible or that Miller's testimony is more compelling—let alone by "clear and convincing" evidence.

In fact, Crooks, Johnson, and Miller all provided testimony that aligns with aspects of the police findings. Crooks testified that Houston shot the victim multiple times, that Houston shot the victim in the face, that the victim fell near a tree in the vacant lot, and that Houston searched the victim's pockets. Supporting this, the medical examiner found multiple gunshot wounds, including one to the face, and the police observed blood near a tree in the vacant lot and found no money in Carlton's pockets. Johnson, likewise, testified that Houston shot the victim multiple times and that the victim fell near a tree. And both Johnson and a police officer testified that they found Carlton alive after being shot. With support in the record, Crooks and Johnson each provided plausible testimony, even if their stories diverged on some details.

Miller's testimony also aligns with details in the record: he describes Nicole living near the vacant lot, the bike in the street, Crooks's car, the woman with Crooks, the multiple gunshot wounds, and the victim found in the vacant lot. But timing renders Miller's testimony suspect. Miller came forward twelve years after the incident and only after meeting Houston in jail; and when the two met, Houston possessed all of Miller's corroborating details. *Cf. Davis v. Bradshaw*, 900 F.3d 315, 329–30 (6th Cir. 2018) (recognizing "corroborating value" of witness's knowledge of "non-public information"). Houston's ineffective-assistance-of-counsel claim depends on his assertion that he knew, at the time of trial, that Nicole lived at the Buena Vista residence. And the trial transcript reveals the remaining "corroborating" details. Like the state

court, a reasonable juror could discount this "corroboration" as an orchestrated, "specious attempt" by Houston to gain "another bite at the apple." R. 9-10, Opinion, PageID 873–74.

Further, Miller provides no corroborating evidence outside of the record. By his own account, he never told Nicole that he witnessed anything. And Houston states that Nicole passed away in 2009. So, she cannot confirm that Miller witnessed the murder, that he was outside her home when the shooting occurred, or even that she knew him. Considering all of this, Houston fails to provide clear and convincing evidence that a jury would find Miller's testimony more convincing than Crooks's or Johnson's.

Our conclusion would not change even if we were to consider Johnson's and Jones's affidavits. As with Miller's affidavit, a reasonable juror could discount these affidavits as unreliable.

As a delayed recantation, Johnson's affidavit is suspect. *See Hubbard*, 98 F.4th at 749. "Affidavits by witnesses recanting their trial testimony are to be looked upon with extreme suspicion." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) (citation modified). Further eroding his credibility, Johnson waited over ten years to recant his testimony. *Cf. Hubbard*, 98 F.4th at 749. And Johnson's story has changed multiple times. He first denied knowing about the shooting; then he claimed he saw the shooting occur; and now he denies knowledge again. At the preliminary hearing, he testified that police threatened to charge him with Carlton's murder if he didn't provide a statement. At trial, he tried to deny this. Now in his affidavit, Johnson alleges no police pressure; instead, he claims that Crooks threatened him.

Jones's hearsay affidavit is also suspect. *Id.* at 750. While hearsay evidence is not forbidden at this stage, "we do not have to give this 'word on the street' hearsay a level of credibility that it does not deserve." *Id.* Further, Jones fails to explain why he waited nearly twenty years to provide evidence of Houston's innocence. *Id.* at 749; *McCray*, 499 F.3d at 573. Considering these deficiencies, a reasonable juror could discount all three affidavits and, again relying on Crooks's testimony, convict Houston.

Houston fails to satisfy the stringent requirements of § 2244(b)(2)(B)(ii), and the district court properly dismissed his petition on this ground.

B.

The district court also dismissed Houston's petition for untimeliness. Houston's opening brief on appeal does not contest the district court's timeliness determination, so Houston has waived any objection to it.**²** Instead, Houston argues that actual innocence entitles him to tolling. We disagree.

AEDPA imposes a one-year limitation period on successive habeas petitions. § 2244(d)(1)(D). But in "rare" instances, a petitioner can toll the limitation period by proving his actual innocence. *McQuiggin*, 569 U.S. at 386; *see also Hubbard*, 98 F.4th at 742.

To support a claim of actual innocence in this context, Houston "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *McCray*, 499 F.3d at 571 (quoting *Schlup*, 513 U.S. at 327) (alteration in original). To make this showing, Houston must provide new "reliable evidence that is exonerative in nature," *Hubbard*, 98 F.4th at 747, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," *Schlup*, 513 U.S. at 324. We then review "all the evidence," both old and new, "with due regard to any unreliability of it," to determine the petitioner's innocence. *Id.* at 328 (citation omitted).

Houston's new evidence consists of affidavits from four individuals: Miller, Johnson, Jones, and Houston himself. But as explained *supra*, Miller's, Johnson's, and Jones's affidavits suffer from serious reliability problems. *Hubbard*, 98 F.4th at 749. Thus, they fail to satisfy the actual-innocence standard. *McCray*, 499 F.3d at 573.

Houston's own affidavits do not change this analysis. In his first affidavit, Houston states that he asked his counsel to interview Nicole, but counsel refused to do so. In the second, he states that he met Miller in prison and learned that Miller both knew Nicole and knew about Carlton's murder. Even if accepted, Houston's testimony fails to meet the standard for equitable tolling, which requires Houston to "demonstrate that he factually did not commit the crime."

---

**²**In his reply brief, Houston does argue that he filed his petition within AEDPA's one-year limitation period. *See* § 2244(d)(1)(D). But "[w]e have consistently held . . . that arguments made to us for the first time in a reply brief are waived." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

*Hubbard*, 98 F.4th at 743 (emphasis omitted). Houston's affidavits provide no evidence of innocence; thus, they are also insufficient.

Because Houston fails to provide any reliable evidence demonstrating that he did not kill Carlton, he fails to establish actual innocence. *See id.* at 747; *Schlup*, 513 U.S. at 324. Although "[e]quitable tolling for actual innocence remains an important" remedy, it is nonetheless to be reserved for "extraordinary" cases; we cannot provide such a remedy "in a less-than-extraordinary case like [Houston's]." *McCray*, 499 F.3d at 577 (citation modified). Therefore, the district court properly dismissed Houston's petition for failing to satisfy the requirements for equitable tolling.

Lastly, due to the unreliability of Houston's evidence, the district court did not abuse its discretion in forgoing an evidentiary hearing. *See Hubbard*, 98 F.4th at 750–51; *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007) ("[T]he decision to grant [an evidentiary] hearing rests in the discretion of the district court."). The affidavits fail to cast any significant doubt on Houston's conviction. *Hubbard*, 98 F.4th at 751. And the district court's decision comports with AEDPA's deferential standards—by which "Congress wished to curb delays, to prevent retrials on federal habeas, and to give effect to state convictions to the extent possible under law." *Schriro*, 550 U.S. at 475 (citation modified).

* * *

We AFFIRM.